## RAILWAY COMPANY *v.* STEWART.

1. The court, in construing the contract between the parties to this suit, holds that the company is not bound to deliver the stipulated new bonds until all the construction bonds which are still outstanding shall be surrendered to it, or due proof made of the loss of such as cannot be produced, and adequate security offered to indemnify the company against liability to any adverse claimant.

2. The parties in interest will then be entitled to a performance of the contract by the company, notwithstanding a decree by consent and in part performance of the contract has been rendered by the District Court of the first judicial district of the State of Kansas, sitting within and for the county of Leavenworth, directing a cancellation of the construction bonds and a discharge of the mortgage securing them.

3. The court calls attention to the irrelevant matter and useless repetitions with which the record in this case is incumbered; and, while reversing the decree below, adjudges that the parties pay their respective costs in this court, and refers to rule 52 in admiralty as containing suggestions which may serve as an appropriate guide in making up the record in a case at law or in equity.

APPEAL from the Circuit Court of the United States for the District of Kansas.

The case was argued by *Mr. John P. Usher* for the appellant, and submitted on printed arguments by *Mr. Matt. H. Carpenter* and *Mr. Joseph B. Stewart* for the appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is a bill in equity filed by Stewart as complainant, Aug. 20, 1868, against the Union Pacific Railroad Company, Eastern Division (now known as the Kansas Pacific Railway Company), the National Mechanics' Bank of Baltimore, the National Union Bank of Maryland, and the National Exchange Bank of Baltimore, but dismissed by the complainant as against the several banks made defendants, Nov. 28, 1871. The case, as stated in the bill, is substantially as follows: —

On the 6th of January, 1866, there were outstanding four hundred and fifty land-grant bonds and six hundred and forty construction bonds of the railroad company, upon which it claimed that it was not liable. All the land-grant bonds and three hundred and ninety of the construction bonds were owned or controlled by Thomas C. Durant. Stewart owned or represented the remaining two hundred and fifty construction bonds. A suit had been commenced by the company, and was then pending, in one of the State courts of Kansas, against Durant, Stewart, and others, the object of which was to obtain a cancellation of the construction bonds, and the mortgage executed to secure their payment. There were also other matters in dispute between Durant and the company, and between him and John D. Perry, its president. In this state of affairs, Stewart, on the 6th of January, 1866, proposed in writing to the company, through its attorney, to surrender all the land-grant and the construction bonds held or represented by Durant or himself, and procure a release by Durant of all actions and rights of action which he had or might have against John D. Perry or the company, or any of its officers, so that its mortgages might be cancelled, if it would in exchange therefor execute and deliver to him, for the parties interested, five hundred of its bonds of $1,000 each, secured by a first lien on the first one hundred and fifty miles of the lands west of Fort Riley, granted by Congress to aid in the construction of its road. It is then alleged that, in the early part of February following, this proposition was accepted, with some slight modifications, and that the company agreed to take up the old bonds and deliver the proposed new ones in exchange; that Durant, in pursuance of

this agreement, executed the proper release, surrendered his bonds, and received in exchange his stipulated portion of the new securities; that certain persons owning some of the bonds represented by Stewart at the time of the contract accepted the terms of the settlement, and made the contemplated exchange; that he, Stewart, was the owner of one hundred and fifty-four of the construction bonds, for which there still remained in the hands of the company one hundred and twenty-six of the new issue, to be exchanged upon surrender in accordance with the terms of the settlement, but that he was unable to produce his bonds, as they were in the possession of the banks that were made defendants, and they refused to give them up. He insisted, however, that the bonds were his, and that they were no longer binding upon the company. He accordingly prayed that the company might be required to deliver to him the bonds which were held for exchange under the terms of the agreement of settlement.

The company answered, denying substantially all the material allegations in the bill.

From the testimony, it appears that Stewart made the proposition set forth in his bill, and that it led to an interview between Durant and the officers of the company, at Philadelphia, early in February, 1866, at which Stewart was present, representing his own interests. Durant objected to the terms proposed by Stewart; and, after some negotiation, a settlement was finally agreed upon, by which the bonds held by all the parties were to be surrendered, and in consideration thereof the company was to pay Durant $100,000 in cash and notes, and execute and deliver four hundred new bonds of $1,000 each, secured by mortgage on the lands of the company lying on the first one hundred miles of its road west of Fort Riley. As part of the settlement, also, the company was authorized to enter in the suit pending in the State court of Kansas a decree directing the cancellation of the construction bonds and the discharge of the mortgage securing them.

Pursuant to this arrangement, the company executed its new bonds and mortgage; and, during the latter part of April, 1866, Durant surrendered his old bonds, and received the part of the new issue which, as between him and the holders of the other

construction bonds, it was stipulated he should have. Alexander Hay, also, who owned seventy-six of the bonds represented by Stewart in the settlement, made his exchanges; and since the commencement of this suit twenty more have been taken up by the company. This leaves outstanding one hundred and fifty-four bonds, claimed by Stewart, which were not exchanged at the same time with the others, because of his inability to control them for that purpose. The parties actually holding them did present them, but on account of his objections the exchange was not made.

In accordance with the terms of the settlement, a decree, cancelling the construction bonds and discharging the mortgage, was entered in the suit pending in the State court.

None of the one hundred and fifty-four bonds have been surrendered to the company, but deliveries of new bonds held for exchange have in some cases been made upon the order of Stewart without a corresponding surrender.

Fifty of the old bonds were lost, and cannot be produced. Hamilton G. Fant, claiming to be the owner of them, filed with the master in this cause the evidence of his title, and of their loss, and asks that their distributive share of the new bonds may be given to him. Of the remainder there were presented to the master by W. A. Coit, five; H. G. Fant, four; R. F. Baldwin, sixty; George E. Jarvis, five. The other thirty are claimed by William. E. Edmonds; and they have never been presented to the master.

Each of the persons presenting the bonds claims them either as owner or as pledgee; and Fant claims to have an assignment of the whole, as security for moneys loaned to Stewart, or for obligations incurred on his account. Stewart disputes the claims of all the different holders, including Fant, and insists that he is entitled to a decree awarding to him all the new bonds now remaining with the company, to carry out the settlement as finally concluded.

None of the persons filing the bonds with the master, or asking an order of distribution in their favor, are parties to the suit, to such an extent or in such a manner that their title can be litigated and determined here. They come in only for the purpose of surrendering their bonds and receiving in exchange

their respective shares of the fund produced by the settlement. Stewart may resist their recovery; but he cannot by their presentation of the bonds secure the possession and control of them, and then upon the surrender claim for himself the stipulated equivalent in exchange.

The company is not bound to make the exchange until the surrender is perfected. It is not required to litigate titles for Stewart, — that he must do for himself. When that is done, if he secures the control of the bonds, he may be entitled to call upon the company to carry out its contract of exchange. But until then, he is in no condition to insist upon performance. The contract on the part of the company was to make the exchange upon the surrender of all the old bonds. It is not required to deal with the individual owners separately, but only to accept the surrender of all, and give the new bonds in exchange. So far as it has gone, however, it is bound by what it has done; but it is not under obligations to go further in that direction. Until, therefore, Stewart surrenders all the remaining outstanding bonds, or makes satisfactory proof of their loss, and furnishes security against the further liability of the company to any other holder, he cannot require it to give him the balance of the new bonds which it still holds for exchange.

The decree of the State court having been entered by consent, and in part performance of the agreement of settlement, is not a bar to a suit for an appropriation of the fruits of the settlement. The outstanding bonds are still binding upon the company to the extent that may be necessary to enable the owners of them to secure the benefit of the consideration agreed to be paid for their cancellation. The present holders, though not parties to the suit in which the decree was entered, are at liberty to treat the settlement as made for their benefit, and to act accordingly.

The view we have taken of the case makes it unnecessary to inquire whether the contract stated in the bill is the same as that which has been proven. The evidence as it stands is not sufficient to entitle Stewart to recover upon either. Both that averred and that proved require him to surrender his bonds for cancellation before he can demand the new ones in exchange. That he is unable to do; and, consequently, at this time he is not

entitled to the decree he asks. It is unnecessary to determine what would be his rights if all the adverse claimants were in court, so that a decree could be entered which would settle their conflicting claims as between each other, and protect the company against further liability. They are not here, and any decree rendered against them in favor of Stewart would not be binding upon them without their consent.

This disposes of the case; but we feel it our duty to call attention to the very unsatisfactory manner in which the record has been made up and sent here for the purposes of this appeal. It contains nearly twelve hundred printed pages, and is full of irrelevant matter and useless repetitions. All that is material for the proper presentation of the cause might easily have been put into one-fourth the space. It opens with a copy of the bill, occupying seventeen pages; and immediately following this is a certified copy of the same bill, attached to the return of the service of a subpœna upon one of the corporation defendants, as to which the suit was subsequently dismissed. The proposition made by Stewart on the 6th of January, 1866, and which is claimed to have been the basis of the contract sued upon, is copied no less than ten times, and an affidavit of his, which occupies seventeen pages, is copied three times within a space of seventy pages. These are but specimens of the gross irregularities with which the record abounds. In addition to this, the matter is not well arranged, and the index is almost useless. We have long suffered from the want of attention of parties, or their counsel, and the incapacity, not to say dishonesty, of clerks below in matters of this kind, and deem this a proper occasion for applying the remedy for such neglect or abuse. We are at a loss to determine whether the complainant or defendant is most to blame for the irrelevant matter which has been introduced into this case; but it is clearly the duty of the party who takes an appeal to see to it that the record is properly presented here. Care should be taken that costs are not unnecessarily increased by incorporating useless papers, and that the case is presented fairly and intelligently. While, therefore, the decree in this case will be reversed, each party will be required to pay his own costs in this court. We shall not hesitate to apply the same remedy hereafter in cases where the circumstances are

such as to require it.  Under rule 24, par. 3, the court below will be required, when the mandate goes down, to tax the costs of the transcript of the record below as part of the costs in the case.  That court will then have an opportunity, if it sees fit, of making an order in respect to the amount its clerk shall be permitted to charge.

It is not easy to prescribe by rule what a record in all cases shall contain or what shall be excluded; but rule 52 in admiralty contains suggestions which may serve as an appropriate guide in cases at law or in equity.

The decree of the Circuit Court will be reversed, and the cause remanded with instructions to enter a decree dismissing the bill without prejudice of the right of the complainant or the holders of the construction bonds, which are the subject of the action, to commence another suit to enforce the alleged contract of settlement, whenever they shall be in a condition so to do.  Each party to these appeals is required to pay his own costs in this court; and it is          *So ordered.*