Finding no error in the record, the judgment will be affirmed.

---

LOUIE DING et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.   October 1, 1917.   Rehearing Denied October 22, 1917.)

No. 2955.

1. CRIMINAL LAW ☞775(3)—INSTRUCTIONS—ALIBI.

In a prosecution for conspiring to violate Act May 6, 1882, c. 126, § 11, 22 Stat. 61, as amended by Act July 5, 1884, c. 220, 23 Stat. 117 (Comp. St. 1916, § 4298), by bringing into the United States aliens not lawfully entitled to enter, instructions, on the defense of alibi, that if a defendant was present when the conspiracy was entered into and did not afterward become a party to it he could not be convicted, but a party may be guilty of a conspiracy though absent, and that it is sufficient if the conspiracy was entered into within three years prior to filing the indictment, were sufficient, for the personal presence of defendant was not necessary, and it is enough that it was entered into within three years of the filing of the indictment.

2. CRIMINAL LAW ☞369(2)—EVIDENCE—OTHER OFFENSES.

In a prosecution for conspiring to bring into the United States aliens not entitled to enter, where there was evidence that defendants were to also bring in opium at the same time, evidence that they did so was admissible, though there was no charge of unlawfully importing opium.

3. CONSPIRACY ☞47—BRINGING IN ALIENS—EVIDENCE.

In a prosecution for conspiring in violation of Act May 6, 1882, § 11, as amended by Act July 5, 1884, to bring into the United States aliens not entitled to enter, evidence *held* to warrant a conviction.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4.** CRIMINAL LAW ⬤⟿823(15)—TRIAL—INSTRUCTIONS—"REASONABLE DOUBT."
     A charge that a "reasonable doubt" is one for which you can give a reason and is not an imaginary or speculative one and may be such a doubt as would cause a reasonable person to hesitate, taken together, is not bad because defining a reasonable doubt as one for which a reason can be given.

     [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Doubt.]

**5.** CRIMINAL LAW ⬤⟿825(1)—TRIAL—INSTRUCTIONS.
     In the absence of a request for a more definite instruction, an instruction that the jury were not concerned with the fact that defendants jointly charged with those on trial had pleaded guilty but had not been sentenced was not erroneous; the jury being charged to consider whether such defendants who testified had been offered immunity.

In Error to the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Louie Ding and another were convicted of conspiracy to violate Act May 6, 1882, § 11, as amended by Act July 5, 1884, by bringing into the United States aliens not lawfully entitled to enter, and they bring error. Affirmed.

Plaintiffs in error, Louie Ding and Louie Lung Gin, together with a number of others, were indicted for conspiring to violate section 11 of the Act of May 6, 1882, as amended by the Act of July 5, 1884, relative to the bringing into the United States from a foreign country of aliens not lawfully entitled to enter the United States. Plaintiffs in error, two codefendants, were convicted, and have prosecuted writ of error.

Walter S. Fulton and William R. Bell, both of Seattle, Wash., for plaintiffs in error.

Clay Allen, U. S. Atty., and Winter S. Martin, Asst. U. S. Atty., both of Seattle, Wash.

Before GILBERT and HUNT, Circuit Judges, and DIETRICH, District Judge.

HUNT, Circuit Judge. Defendants urge that the lower court erred in its instruction upon the defense of alibi. In examining the charge it is necessary to keep in mind the fact that the indictment alleged that the conspiracy was formed at Seattle on December 10, 1915; that two of the overt acts, taking and delivering a letter, were charged respectively to have been done on that day; that another act, boarding a launch at Seattle for Vancouver, was charged to have been done on December 11th; that another, embarking on a launch at Vancouver, was alleged to have been done on December 15, 1915; and that two others, the embarking on a motorboat, were charged to have been done on December 14, 1915.

[1] In the instruction complained of, the court, after defining alibi and stating that Ding asserted that he was not in Seattle when the conspiracy charged was entered into, said:

"If the defendant Ding was not here at the time that the conspiracy was entered into, of course, he would not, and did not, become a member of it afterwards, and, of course, he could not be held 'in this indictment. A party may be guilty of a conspiracy even though he is absent, however, in another state; his presence is not necessary, providing testimony would justify a conclusion that he entered into the conspiracy when he was absent. In this case the testimony is that the conspiracy was entered into while he was here. Now the testimony is somewhat indefinite as to just when that conspiracy was entered into. The government charges it was entered into on the 10th day of December. Now it is not necessary that the government show that this conspiracy was entered into on the 10th day of December. If the testimony shows that the conspiracy was entered into at any time within three years prior to the time of the filing of this indictment by the grand jury, which was on the 27th day of March, 1916, it would be sufficient, and it would be immaterial where the defendant Ding was at the time when the overt acts were done, or at the time when the coconspirators went to British Columbia, if you find they did go to British Columbia, and bring over, or attempt to bring over, persons who were prohibited by law from entering the United States."

When the defendants excepted upon the ground that the defense of an alibi made the time material as fixed by the evidence of the prosecution, the court said:

"My instruction with relation to the exact time not being material may have been just a little general. Now, while the law is, it being sufficient if the offense was proven at any time within three years prior to the time of the filing of the indictment, this conspiracy entered into, and some overt act done, the conclusion must be arrived at from the evidence. You would not be justified in coming to a conclusion as to that arbitrarily; it must be predicated upon testimony, and that is submitted to you as to what the testimony is on the part of the government, and on the part of the defense," etc.

We think these instructions were sufficient to inform the jury of the law applicable to the issue of an alibi. The charge being conspiracy, the personal presence of the defendants was not necessary in the making up of the combination, and the court made it clear enough that the particular conspiracy charged in the indictment and the defendants participating in it must be established although the exact date that it was alleged to have been formed need not be proved, provided the evidence showed that it was entered into within three years before the finding of the indictment. Wharton's Criminal Evidence, 676; Jenkins v. State, 45 Tex. Cr. R. 173, 75 S. W. 312; Glover v. United States, 147 Fed. 426, 77 C. C. A. 450, 8 Ann. Cas. 1184; Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

[2] Upon the trial the prosecution introduced in evidence 150 tins of opium which had been taken to Seattle on the same boat that was used by the conspirators to convey a number of Chinamen charged to have been illegally brought into the United States. Defendants objected contending that, inasmuch as defendants were not charged with the illegal importation of opium or with a conspiracy to import opium illegally, any evidence concerning transactions with respect to the importation of the 150 tins related to a separate independent offense, and therefore was prejudicial and confusing. We cannot sustain the point There was evidence to show that Ding and Lim Jim and one Lortie were together before and during December, 1915; that it was planned

that Lortie should go to Vancouver, get opium from Lim Jim, and bring it to Seattle for Ding and Jim; that Lortie obtained Chinese letters from Ding and delivered them to Jim and another Chinaman in Vancouver; that telephone talks were had between persons at Ding's in Seattle and Lim Jim's in Vancouver; that two defendants, other than these plaintiffs in error, arranged for the Chinamen to board the boat at Vancouver for Seattle, and Lortie received 150 tins of opium from Lim Jim and brought them to Seattle on the same launch with the Chinamen; that the opium was seized and the Chinamen arrested in Seattle; that Ding and Lung Gin were arrested in Portland, Or., Lortie and others in Seattle.

Lortie testified that Ding introduced him to Lim Jim, and that when he went to Lim Jim's place shortly before the importation of the Chinese it was agreed between the two that he would bring back 150 or 155 tins of opium when he brought the Chinamen. Another witness said that Lortie wanted him to go to Vancouver "to get a load of Chinese and some opium."

In the development of the case the evidence concerning the opium was so interwoven with the evidence to show the movements and purposes of the defendants for combining unlawful efforts to bring the Chinamen unlawfully into the United States that the court committed no error in admitting it, and, as it had such direct relation to the case at hand, the mere fact that it tended to show that defendants had committed another offense did not render it incompetent or irrelevant upon the main issue tried.

[3] It is said that there was not sufficient evidence to justify the conviction of defendant Louie Lung Gin, but we think the record shows there was. Ding told Lortie to bring the Chinese to Gin and another person and that Gin would pay him. Gin met Lortie the night the Chinamen arrived in Seattle, and Lortie gave Gin directions about the Chinamen and the opium. Gin engaged the automobile which was taken to the dock to receive the Chinamen and was there to receive the party when it arrived and acted with the members of it with evident knowledge of the whole scheme.

[4] In defining a "reasonable doubt" the court charged as follows:

"Now, a 'reasonable doubt' is just such a doubt for which you can give a reason. When a juror is convinced to a moral certainty of the truth of the fact, then he is convinced beyond a reasonable doubt. It is not a doubt which is imaginary, conjectural, or speculative. Sometimes we say a reasonable doubt is such a doubt as a reasonable person in determining an issue of like concern to himself as that before the jury to the defendant would make him pause or hesitate in arriving at his conclusions."

Defendants object to the declaration that a reasonable doubt is such a doubt as the jury are able to give a reason for. We concede that the phraseology objected to is not a clear explanation, but when it is considered in connection with the whole instruction there was no reversible error. This court so held in Griggs v. United States, 158 Fed. 572, 85 C. C. A. 596, and similar ruling was made by the Court of Appeals for the Second Circuit in Marshall v. United States, 197 Fed. 511, 117 C. C. A. 65.

[5] The court in a portion of its instructions, among other things, told the jury that they were not concerned with the fact that the defendants who were jointly charged with those on trial had pleaded guilty but had not been sentenced. This is urged as error upon the ground that the matter was properly of concern in that the evidence. of such codefendants against defendants on trial came from a polluted source and would not justify conviction "unless corroborated by other disinterested and credible testimony." But the language objected to was not left without explanation, for the court charged that the jury could take the fact referred to into consideration with all the evidence of the witnesses, including their demeanor in weighing their testimony, and consider whether such witnesses had been offered immunity or "anything of that kind." We find no misdirection in such a charge, and, in the absence of a request for a more definite instruction, defendants cannot well argue that the court ought to have gone farther in advising the jury as to the weight to be given to the testimony of the codefendant witnesses. Diggs v. United States, 220 Fed. 545, 136 C. C. A. 147.

Finding no prejudicial error, the judgment is affirmed.