Clyde L. SCHAFFER and James H.
Devenny, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 14980.

United States Court of Appeals,
Fifth Circuit.

April 8, 1955.

**18**

Thomas C. Wicker, Jr., New Orleans, La., Dave Caton, Pensacola, Fla., for appellants.

C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., Harrold Carswell, U. S. Atty., Tallahassee, Fla., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

Appellants, Schaffer and Devenny, were charged by indictment with unlawfully receiving, concealing and retaining with intent to convert to their own use and gain certain property of the United States, viz.: 1 SNJ Airplane Propeller and 10 SNJ Airplane Landing Gear Struts, which property had theretofore been stolen, as the said Schaffer and Devenny then and there well knew, the value of said property being more than $100, in violation of Title 18, Section 641, United States Code. The only disputed issue of fact was whether Schaffer and Devenny, at the time they received, retained, and sold the property, knew that it had been stolen.

On two previous trials, the jurors had been unable to agree and mistrials had been declared. On motions filed by Schaffer and Devenny, the judge who had presided at the previous trials had granted a change of venue and had recused himself. Tried to a jury and before a different judge, each defendant was found guilty, and was sentenced to imprisonment for a period of two years.

The Government's principal witnesses were James T. Boatwright, Roy L. Tanksley, and Robert W. Fellman. Fellman was an agent for the Federal Bureau of Investigation who testified as to a confession obtained from Schaffer. Boatwright and Tanksley had confessed to stealing the property in question and while awaiting sentence on their conviction of such charge, turned state's evidence. They were enlisted men in the United States Navy stationed at Whiting Field, an auxiliary base approximately thirty miles from the Main Base of the United States Naval Air Station at Pensacola, Florida. Schaffer and Devenny had worked part time at Aircraft Parts and Supply Company, owned by Walter Williams and located approximately three miles from the Main Base. Williams' conviction of receiving other Government property knowing that it had been stolen by Boatwright and Tanksley was affirmed by this Court in Williams v. United States, 208 F.2d 447.

The contention of each appellant that the court erred in denying his motion for judgment of acquittal is without merit, the issues on such motions being almost identical with the issues on a like motion in Williams v. United States, supra.

Devenny moved that he be given a separate trial and supported such motion by affidavit of his counsel,

"that the trial of this cause will be the third trial of this matter, the two previous trials having resulted in deadlocked juries. In neither trial of this case has a confession been introduced against defendant, Devenny. In the last trial of this case, a confession made by defendant Schaffer admitting the offense and implicating defendant, Devenny, was admitted in evidence. This was extremely prejudicial to defendant, James H. Devenny. Defendant, James H. Devenny, has made a statement to authorities but did not admit in it that he committed an offense. Devenny's statement was not used in either of the previous trials and it will be extremely prejudicial to defendant, James H. Devenny, to force him to trial with defendant, Schaffer, who has made a confession which implicates defendant, Devenny."

Devenny's motion for severance was denied and the defendants were tried jointly. The granting or refusing of a severance is within the trial court's discretion [1] and not subject to review or correction unless that discretion is abused. What constitutes abuse of discretion necessarily depends upon the facts in each particular case. Brady v. United States, 8 Cir., 39 F.2d 312, 313. Under the circumstances of an earlier case, this Circuit held that refusing a severance was not an abuse of discretion, even though the movant's co-defendant had confessed implicating the movant. Raarup v. United States, 5 Cir., 23 F.2d 547. See, also, Johnson v. United States, 6 Cir., 82 F.2d 500; Maxey v. United States, 30 App.D.C. 63; United States v. Fradkin, 2 Cir., 81 F.2d 56; Hall v. United States, 83 U.S.App.D.C. 166, 168 F.2d 161, 4 A.L.R.2d 1193; cf. Dauer v. United States, 10 Cir., 189 F.2d 343, 344.

A careful study of the record in this case, however, leads us to the conclusion that the motion for severance should have been granted. Devenny and Schaffer were together throughout the transaction; both were present on every pertinent occasion. Shaffer's confession implicated Devenny and, while the trial judge elminated from the confession the statement that "I think that Devenny knew the property was stolen," other parts of the confession clearly prejudiced Devenny in the eyes of the jury. The court, of course, properly instructed the jury to consider the confession as evidence against Schaffer alone, and to disregard it as evidence against Devenny. We believe, however, that the two defendants were so inseparably connected that the jury could hardly have been expected to return a verdict of guilty against one and of not guilty as to the other. There being only two defendants, it would not be very time consuming but entirely practicable to accord them separate trials. Like the Seventh Circuit in the case of United States v. Haupt, 136 F.2d 661, 672, "We doubt if it was within the realm of possibility for this jury to limit its consideration of the damaging effect of such statements merely to the defendant against whom they were admitted." We hold, therefore, that the court erred in denying the appellant Devenny a separate trial.

The appellant Schaffer insists that the court erred in denying his motion for the production of statements signed by him for the Naval authorities on or about June 24, 1952, and for the FBI agent on June 27, 1952, which statements were used in part in the dictation by the FBI agent, in Schaffer's presence, of the statement of July 10, 1952, signed by Schaffer, and which was introduced in evidence. A defendant's signed statement does not come within the purview

1. Rule 14, Federal Rules of Criminal Procedure, 18 U.S.C.A.
"Relief from Prejudicial Joinder
"If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials or counts, grant a severance of defendants or provide whatever other relief justice requires."

of Rule 16 of the Federal Rules of Criminal Procedure as being a document in the custody of the defendant at the time the Government acquired possession of it. Shores v. United States, 8 Cir., 174 F.2d 838, 843, 844, 11 A.L.R.2d 635. We think the breadth of the demand by defendant Schaffer marks it as a "fishing expedition" designed to probe the strength of the Government's evidence in advance of trial and that the trial court properly denied the motion of the defendant Schaffer for the production of such statements. See United States v. Muraskin, 2 Cir., 99 F.2d 815, 816; United States v. Rosenfeld, 2 Cir., 57 F.2d 74, 76, 77.

It is further insisted that the trial court erred in admitting Schaffer's confession in evidence at the conclusion of the testimony of FBI Agent Robert Fellman and without hearing conflicting testimony before determining its admissibility. Prior to the introduction of Schaffer's confession, the United States Attorney, in the absence of the jury, placed the FBI witness on the stand, and he testified at length with reference to the signed statement by Schaffer. Immediately upon the conclusion of his testimony, the court announced: "The Court rules that the statement was voluntarily given and it is a matter of law. We will submit the question of fact to the jury. As a matter of law I think it has been shown that it was given voluntarily." The following discussion between court and counsel then occurred:

"Mr. Caton (Counsel for Schaffer): If it please the Court, I ask to be allowed to place the defendant and other witnesses on the stand to show whether or not it was voluntary.

"The Court: If there is a conflict matter, an issue made as to whether or not it was voluntary, but on the showing made by the government here the court finds, we will say prima facie, as a matter of law, it was freely given. Now, if the defendant wants to make an issue of it, he may do so, but it is certainly sufficient to go to the jury and with the issue of whether or not it was voluntarily (sic) if the defendant wants to make that issue.

"Mr. Caton: He certainly does, Your Honor.

"The Court: That is all right.

"Mr. Caton: Under the Court's ruling, he must do that before the jury?

"The Court: Yes, yes if he wants to make an issue of it, of that particular matter."

The discussion continued at some length both on and off the record and finally terminated as follows:

"The Court: The Court rules to allow the government to introduce its confession or statement at this time and hearing the defendant on the question of whether or not it was voluntarily given is any advantage to the defendant in having it before the jury or me, we would have to go over it again. If he wants to make an issue at the time he testifies, or any other time, he may do so, and have the jury pass on the question of whether or not it is voluntary. * *
*   *   *   *   *   *

"The Court: Is there any request for putting Mr. Schaffer on the stand without the jury?

"Mr. Caton: I would like to ask for the opportunity to contest the voluntariness or involuntariness of the statement. I contend it is a controversial issue.

"The Court: Do you want to do it out of the presence of the jury?

"Mr. Eggart: Out of the jury.

"The Court: Is it any advantage to the defendant to have it?

"Mr. Eggart (the Assistant United States Attorney): I don't want to run the risk of a reversible error.

"The Court: I have ruled on the government's testimony here, the Court is satisfied it was voluntarily given as a matter of law.

"Mr. Caton: No further advantage.

"Mr. Wicker (Counsel for Devenny): On behalf of the defendant, Devenny, I would like the record to show that I objected to it as not being voluntary."

There was no further request to put Schaffer or his witnesses on the stand out of the presence of the jury to contest the voluntary character of the statement. He did testify before the jury to facts tending to show that the statement was involuntary, was procured from him by threats and by promises of leniency, and was untrue. Further, his wife and his brother testified to offers of leniency if Schaffer turned state's evidence. The court charged the jury in part as follows:

"The Court instructs the Jury that an alleged written confession purporting to have been made and signed by the defendant, which would be Schaffer in this case, has been introduced in evidence before you and as to the same you are instructed that unless you believe from the evidence, beyond a reasonable doubt, that the defendant made the same and that he made it freely and voluntarily and without compulsion, persuasion, or promise, you will reject the same and not consider it for any purpose whatsoever."

██ The facts and circumstances surrounding the giving of a confession affect both its admissibility and its credibility. That situation has led some courts to adopt the rule apparently followed by the district judge in this case, that the prosecution need only make a prima facie showing that the confession was voluntary before it is admitted in evidence, and that thereafter the issue of voluntariness should ultimately be decided by the jury. See Stein v. New York, 346 U.S. 156, 192, 73 S.Ct. 1077, 97 L.Ed. 1522; Annotations 85 A.L.R. 870; 170 A.L.R. 567; Meltzer, Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury, The University of Chicago Law Review, Vol. 21, p. 317. The better view, we think, and that prevailing in the federal courts,[2] is that the responsibility for admitting a confession in evidence rests solely on the court, and that the court must determine for itself after a full hearing of all of the evidence offered on the issue, whether or not the confession is voluntary and admissible.[3]

██ In trials in the federal courts, it has now been settled by decision of the Supreme Court that the trial judge commits reversible error when he refuses to permit the defendant to testify in the absence of the jury to facts believed to indicate the involuntary character of his confession. United States v. Carignan, 342 U.S. 36, 38, 72 S.Ct. 97, 96 L.Ed. 48; cf. Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948.

██ True, in the present case, the court did not refuse to hear the defendant's testimony in the absence of the jury, but formally offered the defendant an opportunity so to testify. That offer, however, under the circumstances made, amounted to a sheer formality. The court had already ruled that the confession was admissible, and had given no

2. Patterson v. United States, 5 Cir., 183 F.2d 687, 689; United States v. Carignan, 342 U.S. 36, 38, 72 S.Ct. 97, 96 L.Ed. 48.

3. The function of the jury has been well stated in an early Alabama case, Brister v. State, 26 Ala. 107:
"'Whenever a confession is admitted by the court, the jury must take it; they cannot reject it as incompetent; they are confined to its credibility and effect. Either party has the right to prove to the jury the same facts and circumstances which were legally proved to the court when it was called upon to decide the question of competency, and all other circumstances applicable to the confession or having any legal bearing on its credibility or effect; and if, in view of all the facts and circumstances proved, the jury entertain a reasonable doubt as to the truth of the confession, they may disregard it, in their decision of the case, as being incredible, although they cannot reject it as incompetent * * *.'" 85 A.L.R. 873. Cf. Patterson v. United States, supra, note 2.

**22**

indication that it would reconsider that ruling, but reiterated, "I have ruled on the government's testimony here, the Court is satisfied it was voluntarily given as a matter of law." Schaffer's counsel was then fully justified in his position that there was no further advantage to Schaffer to have his testimony taken out of the presence of the jury. Indeed, the court's attitude was that a contrary position would merely waste the court's time. For this error the judgment of conviction of Schaffer must be reversed.

■ The remaining errors urged by the appellants relate to the court's charge to the jury. The Government insists that such specifications of error are not properly before this Court because counsel failed to make their objections before the jury retired to consider its verdict as required by Rule 30 of the Federal Rules of Criminal Procedure.[4]

The court concluded its charge to the jury with the statement, "All right, you may retire", whereupon the jury retired. Defendants' counsel then stated to the court that they desired to make certain objections, and the court replied, "You may state it right now," whereupon the objections hereinafter considered were fully stated. Unless the court understood that by giving counsel permission to state their objections after the jury retired, it might even then recall the jury for any necessary correction of the charge, it did not observe the duty imposed upon it by the last sentence of Rule 30, supra, "Opportunity shall be given to make the objection out of the hearing of the jury." We agree with what Chief Judge Parker of the Fourth Circuit said in Lovely v. United States, 169 F.2d 386,

391, that " * * * counsel should not be required in the presence of the jury to place themselves in the attitude of apparent antagonism to the trial judge which is involved in excepting to the charge." We hold, therefore, that, under the circumstances prevailing in this case, the objections to the court's charge were timely made. Cf. Bostwick v. United States, 5 Cir., 218 F.2d 790, 791, 792.

■ In its charge to the jury, the court gave the following instructions:

"Now, in this case, the crux of this case and one about which a question arises, the main question arises, is the knowledge on the part of these defendants, or each of them, or both of them, of the fact that the property was stolen at the time that they received it, at the time that it came into their possession. That is, as I say, the main question in the case. Now, as to knowledge, Gentlemen, the Court charges you that guilty knowledge does not mean only actual knowledge, but includes constructive knowledge through notice of facts and circumstances so out of common that any ordinarily intelligent man would naturally be moved to make further inquiry about them. If a defendant has knowledge of facts which would put a man of ordinary intelligence on inquiry to ascertain whether or not the property was stolen, and if a reasonable inquiry would have disclosed that the property was stolen, you are entitled to infer guilty knowledge on the part of the defendant, or the defendants, that the property was stolen. Such knowledge, like any other fact, may

---

4. Rule 30, Federal Rules of Criminal Procedure:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

be inferred from facts and circumstances proved by the evidence in the case."

After the court had completed its instructions, one of the jurors, Mr. Slade, the man who became foreman of the jury, requested that the court read the definition of knowledge again. The court answered that request by repeating the latter part of the charge, beginning with the sentence: "Guilty knowledge does not mean only actual knowledge, but includes constructive knowledge through notice of facts and circumstances so out of common that any ordinarily intelligent man would naturally be moved to make further inquiry about them."

The quoted instructions, as a whole, we think, were misleading; the sentence last quoted was erroneous, and, in view of the circumstances of its repetition, the charge, may very well have been injurious. Title 18, Section 641, of the United States Code reads in part: "Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, *knowing* it to have been embezzled, stolen, purloined or converted— * * *." (Emphasis supplied.) To be guilty of the crime charged in the indictment, a defendant must himself have known that the property had been stolen. While the jury may draw reasonable inferences of whether, from the facts actually proved to have been within his knowledge, a defendant knew that the property had been stolen, he cannot be convicted merely because he may have been stupid or negligent; he cannot be held by the court as a matter of law to the standard of mentality of some imaginary man of ordinary intelligence or to the degree of diligence that would be exercised by such a man. Pounds v. United States, 7 Cir., 265 F. 242; Peterson v. United States, 9 Cir., 213 F. 920; Stemple v. United States, 4 Cir., 287 F. 132.

In its charge to the jury the court defined a reasonable doubt as follows: "Now, a reasonable doubt, Gentlemen, is just what the term implies. It is not a foolish, fanciful, fictitious, capricious doubt, but one that is founded in reason, one for which you may give yourselves a reason. It is a doubt that would arise in the minds of reasonable men." Instructions to the effect that a reasonable doubt is one for which a reason can be given have been held by some courts to be reversible error. Owens v. United States, 9 Cir., 130 F. 279;[5] Pettine v. Territory of New Mexico, 8 Cir., 201 F. 489, 496; Ayer v. Territory of New Mexico, 8 Cir., 201 F. 497, 498. Other courts have criticized such a charge but have held that it did not constitute reversible error. United States v. Farina, 2 Cir., 184 F.2d 18, 21, 23, 24; United States v. Woods, 2 Cir., 66 F.2d 262, 265; Marshall v. United States, 2 Cir., 197 F. 511, 512; Murphy v. United States, 3 Cir., 33 F.2d 896. It is not necessary at present for this Court to align itself with either view, since the judgment must be reversed for other errors, and the expression will probably not recur upon another trial. Cf. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

5. Compare, however, Louie Ding v. United States, 9 Cir., 246 F. 80, and Freeman v. United States, 9 Cir., 158 F.2d 891, 896.