Leslie C. **BOSTICK** and Charles P. Lainhart, Appellants,

v.

**UNITED STATES** of America, Appellee.

Leslie C. **BOSTICK**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 24287, 25301.

United States Court of Appeals Fifth Circuit.

Aug. 14, 1968.

Certiorari Denied Jan. 27, 1969.

See 89 S.Ct. 725.

R. S. Carrigan, Houston, Tex., for Charles P. Lainhart.

Julie G. Lowenberg, Michael Lowenberg, Dallas, Tex., for Leslie C. Bostick.

James R. Gough, Ronald Blask, Asst. U. S. Attys., Houston, Tex., for appellee.

Before BROWN, Chief Judge, and WISDOM, Circuit Judge, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

Leslie C. Bostick and Charles P. Lainhart were indicted on seven counts. The first count charged a conspiracy under 18 U.S.C. § 371 to violate 18 U.S.C. § 2314 by transporting forged securities in interstate commerce. The remaining six counts each charged a substantive violation of 18 U.S.C. § 2314.

The trial judge in a memorandum opinion dated November 7, 1967, described the scheme as follows:

"On trial of the case there was shown by overwhelming and undisputed evidence that Bostick and Lainhart were the moving factors in a highly efficient and successful fraudulent check scheme. Their plan of operation was to secure, by various means, legitimate payroll checks from a series of substantial companies, and then to have these reproduced by a printer-conspirator. These defendants would then recruit a number of young people, without prior criminal records and some in the uniform of their country, to pass these checks at supermarkets and other such businesses. A number of different companies were victimized with the evidence showing, as I recall, that these defendants received as their portion the lion's share of a total take in the range of $100,000. None of the money was recovered. No restitution was ever made. Neither of the defendants elected to testify."

The court sentenced Bostick and Lainhart to serve, concurrently, ten years on each of counts two through seven and to pay a fine of $2,000 on each of counts three through seven. On the first count, the court sentenced the defendants to five years imprisonment, suspended for five years.

On appeal able court-appointed attorneys for Bostick and Lainhart raise a number of issues. We have considered all of the appellants' contentions, al-

though we find it necessary to discuss only the following questions.

## I.

The appellants contend, first, that they were denied the benefit of counsel.

The trial judge carefully detailed most of the relevant facts regarding the defendants' asserted denial of counsel. See the memorandum opinion dated November 7, 1967, attached to this opinion as an appendix. He reached the following conclusions:

"This Court undertook for a period of seven months to bring this case to trial. During this interval the defendants Bostick and Lainhart, though incarcerated and unable to make bond, used every device and machination known to the law, and then perhaps invented a few of their own, to defeat the orderly disposition of the case. The transcript of these preliminary proceedings which I have just re-read to refresh my recollection, is so fantastic as to be almost beyond belief. It presents the question as to whether ever, under any circumstances, a district court in the orderly administration of its functions can bring a criminal case to trial over the objection of the defendant. * * *

"I am convinced beyond a shadow of a doubt that the various artifices practiced by these two defendants prior to trial in continually gaining continuances, and in claiming that while entirely able financially to do so they were still unsuccessful in securing counsel of their own choice were deliberate, were not in good faith, and— with the knowledge that they had no hope of success in the trial court— was for the express purpose of preserving this question for appeal and, thereafter habeas corpus."

■ The record supports the trial judge's conclusions. The defendants used their right to counsel as a means of frustrating the orderly processes of justice. As Judge Weinfeld, in a similar situation, put it, "The trial court not only did not abuse its discretion, but displayed Rhadamanthine forbearance and patience in dealing with the petitioner's numerous requests and excuses for continued postponements." United States ex rel. Gallo v. Follette, S.D.N.Y. 1967, 270 F.Supp. 507.

■ Both Bostick and Lainhart had ample opportunity to retain attorneys of their own choice. Each repeatedly asserted that he was not an indigent and that he would hire his own attorney. While in jail both had numerous consultations with their attorneys; for example, Bostick had 53 lawyer-visits. On a number of occasions the various trial judges assigned to the case explained to the defendants their right to appointed counsel. Bostick eventually accepted appointed counsel. Lainhart did not, but he expressly waived his right to counsel. Thus, the following colloquy took place:

COURT: It is my understanding from what Judge Ingraham has told me that . . . *you don't want appointed counsel. Is that true of both of you?*

LAINHART: Yes, sir. (Emphasis supplied.)

It is a fair inference that Lainhart's tactic was to force the court to put him on trial without counsel; that Bostick's tactic was to accept the services of an attorney while apparently attorneys were being thrust upon him against his wishes. The defendants had unlimited access to retained attorneys, whom they said that they would employ, or to competent court-appointed attorneys, whom they rejected. Rhadamanthus below or angels above could have done no more for the defendants than the harassed trial judges did in this case.

## II.

■ Bond for Bostick and Lainhart was originally set at $50,000. The court later reduced it to $25,000. The question whether the bail set before trial was excessive became moot after the judgment of conviction was rendered.

■ The defendants contend that their continued incarceration because of their inability to furnish bail hampered

their defense. As far as the record goes, the defendants were treated just as other prisoners are treated. There were no special restrictions on the defendants' negotiations with prospective attorneys or on their consultations with attorneys. Bostick and Lainhart made no showing that their incarceration hampered their defense. See United States v. Barney, 7 Cir. 1967, 371 F.2d 166.

### III.

Bostick contends that the case as to him should have been severed. But here neither defendant testified. There was no confession by either. Both were indicted as co-conspirators. They made a common defense on the general issue of "not guilty" and offered no evidence on their behalf. Almost all of the evidence was offered against both as co-defendants.

■■■ The determination of the severance issue is one within the sound discretion of the trial court. Schaffer v. United States, 5 Cir. 1955, 221 F.2d 17, 54 A.L.R.2d 820. Here the trial court did not abuse its discretion in trying the co-conspirators together.

### IV.

Lainhart contends that his motion for change of venue should have been granted, particularly in light of recent amendments to Fed.R.Crim.P. 18 and 21 and the repeal of Rule 19. The record does not support this contention.

■■■ The recent amendments had the effect of eliminating the division as a unit of venue in criminal cases. It remains as an administrative unit in those districts which are subdivided by law into divisions. However, the division has no constitutional significance; the vicinage is the district. Lafoon v. United States, 5 Cir. 1958, 250 F.2d 958, 959; cf. Billingsley v. United States, 8 Cir. 1910, 178 F. 653. Under Rule 21 as it now reads, transfers may be made because of local prejudice. In determining whether such prejudice in fact exists, the trial court exercises a wide

discretion. United States v. Moran, 2 Cir. 1956, 236 F.2d 361, cert. den. 352 U.S. 909, 77 S.Ct. 148, 1 L.Ed.2d 118. Three newspaper stories were offered as evidence of prejudice. Two were dated December 17, 1965, eight months prior to trial. The other was dated March 24, 1966, nearly three months before the trial. There is no evidence that these stories influenced the jury in any way or even that any juror had read any of the stories.

■■■ The appellant complains that the record does not contain the *voir dire* examination of the jurors, citing Stephens v. United States, 5 Cir. 1961, 289 F.2d 308. In the case at bar, unlike *Stephens*, the *voir dire* was taken down by the reporter, although not transcribed by her, and her notes are on file with the district court. It is the appellant's burden to bring forward the record on which he relies to demonstrate that error occurred below. It is his responsibility to have the notes transcribed and to see that they are included in the record. Union Pacific R. R. v. Stewart, 95 U.S. 279, 284, 24 L.Ed. 431, 432; Springer v. Best, 9 Cir. 1959, 264 F.2d 24.

### V.

Bostick and Lainhart contend that the court erred in refusing to allow them credit for seven months and twenty-three days spent in jail before their trial. See Bryans v. Blackwell, 5 Cir. 1967, 383 F.2d 986; accord: Stapf v. United States, 1966, 125 U.S.App.D.C. 100, 367 F.2d 326; Dunn v. United States, 4 Cir. 1967, 376 F.2d 191. See also Putt v. United States, 5 Cir. 1968, 392 F.2d 64.

The good time statute, 18 U.S.C. § 4161 provides:

§ 4161. *Computation generally.*

Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his

sentence beginning with the day on which the sentence commences to run, as follows:

Five days for each month, if the sentence is not less than six months and not more than one year.

Six days for each month, if the sentence is more than one year .and less than three years.

Seven days for each month, if the sentence is not less than three years and less than five years.

Eight days for each month, if the sentence is not less than five years and less than ten years.

Ten days for each month, if the sentence is ten years or more.

When two or more consecutive sentences are to be served, the aggregate of the several sentences shall be the basis upon which the deduction shall be computed. As amended Sept. 14, 1959, Pub.L. 86–259, 73 Stat. 546.

Under this statute, if the defendants' sentence is for the maximum term, ten years, within the meaning of Bryans v. Blackwell, supra, the good-time allowance will be 10 days a month or 1200 days. The defendants will be worse off if the case should be remanded for the district court to reduce the sentence by eight months. The good-time allowance will then be only eight days a month or 896 days.

■■■ The Government points out that this case involves concurrent terms of ten years on each of six substantive counts. According to the Government's view a total of sixty-years might have been given and, therefore, under Bryans v. Blackwell, supra, there is a conclusive presumption that the district court took into account jail time. As far as Bostick and Lainhart are concerned, their good-time credit is computed at ten days a month for a sentence of ten years or more. We take this opportunity, however, to note that the good-time statute provides, "When two or more *consecutive* sentences are to be served, the aggregate of the several sentences shall be the basis upon which the deduction shall be com-

puted." This specific statutory reference to aggregation of *consecutive* sentences and the omission of any reference to *concurrent* sentences leads us to conclude that the concurrent sentences are not aggregated in determining the basis for computing the good-time credit. The Attorney General, through the Bureau of Prisons, should therefore administratively apply credit on the basis that Bostick and Lainhart were given the maximum sentence of ten years. See Putt v. United States, supra.

The judgment is affirmed.

### APPENDIX

### IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

United States of America

vs. Criminal No. 65–H–256

Leslie Bostick and

Charles P. Lainhart

November 7, 1967

*MEMORANDUM:*

On Motion Of Lainhart For
Recognizance Bond
Filed: Nov. 8, 1967

With this action having been on appeal since August 18, 1966, as to this defendant and his cohort and co-conspirator Bostick, Lainhart files in this Court his motion for recognizance bond seeking his release, without surety, pending appeal. In Paragraph IV thereof, "Issues on Appeal," petitioner asserts that his appeal is in good faith and that he is "raising very substantial issues," listing first the question, "May a federal criminal defendant be deprived of counsel at every stage of the proceedings?". With respect to this question, I consider it appropriate to make the following comments.

This Court undertook for a period of seven months to bring this case to trial. During this interval the defendants Bostick and Lainhart, though incarcerated and unable to make bond, used every device and machination known to the law, and then perhaps invented a

few of their own, to defeat the orderly disposition of the case. The transcript of these preliminary proceedings, which I have just re-read to refresh my recollection, is so fantastic as to be almost beyond belief. It presents the question as to whether ever, under any circumstances, a district court in the orderly administration of its functions can bring a criminal case to trial over the objection of the defendant.

On trial of the case there was shown by overwhelming and undisputed evidence that Bostick and Lainhart were the moving factors in a highly efficient and successful fraudulent check scheme. Their plan of operation was to secure, by various means, legitimate payroll checks from a series of substantial companies, and then to have these reproduced by a printer-conspirator. These defendants would then recruit a number of young people, without prior criminal records and some in the uniform of their country, to pass these checks at supermarkets and other such businesses. A number of different companies were victimized with the evidence showing, as I recall, that these defendants received as their portion the lion's share of a total take in the range of $100,000. None of the money was recovered. No restitution was ever made. Neither of the defendants elected to testify.

I am convinced beyond the shadow of a doubt that the various artifices practiced by these two defendants prior to trial in continually gaining continuances, and in claiming that while entirely able financially to do so they were still unsuccessful in securing counsel of their own choice were deliberate, were not in good faith, and—with the knowledge that they had no hopes of success in the trial court—was for the express purpose of preserving this question for appeal and, thereafter habeas corpus.

I set out below in chronological order a brief statement of each development. Four Judges of this District (Judge Allen B. Hannay, Judge Joe M. Ingraham, Judge Darwin W. Suttle, by designation, and myself) all had part in these pretrial activities. After the most painstaking effort by each to assure that these defendants were afforded their full rights, the patience of each ultimately was exhausted. Had it occurred that the case had been handled throughout by a single judge, I have no doubt that the defendants would have been unable to take advantage of the Court for so long a time.

12–13–65: The indictment was returned for these defendants (Bostick and Lainhart) and warrants for these defendants (Bostick and Lainhart) were issued. Bond was set at $50,000 for each. Judge Reynaldo G. Garza presiding.

At this stage these defendants had no difficulty in employing counsel of their own choice. They were immediately represented by John W. O'Dowd.

12–17–65: Defendants were called for arraignment. (Judge Hannay presiding). At the request of their counsel, re-arraignment was continued until January 7, 1966.

12–20–65: A motion to reduce bond for these two defendants was filed and a hearing immediately set for January 6, 1966.

1–6–66: The defendants request that their arraignment be passed from the setting of January 7, 1966, which was granted.

1–10–66: Hearing was held on the motion for the reduction of bond, which continued until January 13, 1966. Briefs were filed. Defendants again request that their arraignment be continued, and the Court resets the arraignment for January 21, 1966.

2–3–66: Motion to reduce bond is granted by Judge Hannay, reduction being from $50,000 to $25,000 as to each of these defendants.

2–4–66: Arraignment again is reset at the request of defendants for February 11, 1966.

2–11–66: Defendants are arraigned. Each enters a plea of not guilty to all counts. Trial date is set for March 21, 1966.

3-21-66: The defendants file a motion to quash the indictment, motion for continuance, motion for discovery, etc. These motions are denied (Judge Hannay presiding). At this time both Bostick and Lainhart are represented by John W. O'Dowd and John Ille.

3-22-66: (Tuesday, and the day following the trial date.)

With the jury present and the government ready to proceed, Mr. O'Dowd advised the Court privately that the government had made available its evidence and exhibits to him; that he found the evidence so strong against Lainhart that he advised him to plead guilty; that Lainhart then indicated that he did not desire that O'Dowd represent him further in view of that recommendation, as he would lack faith in such counsel. Lainhart asked for a brief recess in an attempt to secure new counsel. The Court recessed until 2:00 P.M. At that time Judge Hannay ruled that this matter came too late and declined to release O'Dowd from his obligation to represent Lainhart. A jury was impaneled and the case proceeded to trial with O'Dowd representing both defendants.

3-23-66: In the course of the trial certain witnesses of the government give testimony tending to show that O'Dowd was or may have been a conspirator with these defendants during the course of the conspiracy. Both defendants move for a mistrial on the basis of "conflict of interest," taking the position that O'Dowd cannot adequately represent them if his own participation is in issue. After full hearing Judge Hannay grants the motion for mistrial and O'Dowd is discharged.

4-22-66: Judge Ingraham by this time has assumed the criminal docket. He calls the defendants into court for the purpose of determining that they are represented, and to fix a trial setting. Each defendant advised the Court that he did not at that time have an attorney, Bostick stating that he expected to have one that day, and Lainhart that he expected to have an attorney within the week. The defendants advised the Court that they were able to employ an attorney. The case was definitely and preferentially set, by reason of the large number of out of state witnesses, for May 31, 1966.

5-6-66: Defendants again called into court by Judge Ingraham to be certain that they have counsel and would be ready for trial May 31. At that time Bostick stated that he had employed his attorney Orville Harlan and Lainhart stated that he had employed as his attorney Jack Miles. The Court admonished both defendants that the case would be tried on May 31st and that they should be ready. They assured the Court their attorneys were aware of this fact.

5-18-66: Defendants again appear in open court and the earlier developments are stated. Judge Ingraham advises that he is in receipt of communications from Mr. Harlan and Mr. Miles stating that they do not represent these defendants. The defendants stated they were still without counsel, but had been in recent communication with several attorneys whose names were mentioned. Lainhart advises the Court, with respect to his attorney Miles, that "There are basic differences between the two of us as to the handling of the case. I don't think I can go to trial with Mr. Miles representing me." During this hearing Bostick advises the Court that he has four pieces of property which he is liquidating and that while earlier he was somewhat handicapped by lack of funds, "Now that the funds are rolling in," he was well able to employ counsel.

Judge Ingraham advises the defendants quite forcefully that the case is set for May 31 and it would be tried on that date and particularly that a visiting judge (Judge Suttle) would preside; and that the Court desires everything to be ready by that time. Bostick asks that the case be "put off

Just another two or three weeks." This is denied by Judge Ingraham.

In discussing with the Court whether they were financially able to employ counsel, Bostick states, "It is not a matter of indigency."

5-31-66: (Judge Darwin W. Suttle presiding).

On this date the defendants are still without counsel. Judge Suttle tenders two appointed counsel to Lainhart, Mr. George Stack and Mr. T. F. Pound. In answer to the Court's question, Lainhart states that, "I will accept them."

At this point to give counsel time to become familiar with the case it is continued until Thursday, June 2, 1966. The government, of course, is ready and has a large number of out of state witnesses standing by. The United States attorney offers to make the documentary evidence and a copy of the transcript of prior proceedings available to the new defense counsel.

6-1-66: In abundance of caution Judge Suttle again has the defendants brought to open court to be certain of their representation and to explain the benefits available under the Criminal Justice Act and requests Lainhart (who is represented by the two appointed counsel of the previous day) to complete administrative office form whereby such counsel may be compensated by the government. (The questions: Are you employed, regular salary, how many dependents, etc.) Lainhart categorically refuses to fill out the form.

Lainhart then states to the Court that on further consideration he will not accept the two court appointed counsel, and that "The Court was imposing them on me. I would prefer to discharge them and to obtain my counsel."

Judge Suttle comments at considerable length about the various delays which have been accorded defendants in their effort to procure counsel, explains at length the benefits available under the Criminal Justice Act and states that the case is to proceed to trial the following day.

At this point Bostick's privately employed counsel, Mr. John Luker, is introduced who stated that he had been employed the night of May 30, 1966. It is then made known that Mr. Luker was a member of the bar for twenty years, but had not been in active practice, having been employed by a title company until three months ago. He had been in active practice for three months. He was not admitted to practice in the United States District Court for the Southern District of Texas and in fact was under indictment in the state court in connection with a very large embezzlement scheme which had bankrupt the title company-employer.

By reason of this fact Judge Suttle declines to permit Luker to practice and offers Bostick court-appointed counsel. In answer to this inquiry, "Do you have funds with which to employ counsel now?," Bostick replied: "Considerable funds. Yes, sir."

Judge Suttle states, "This Court's patience—and I am speaking for all of the Judges who have been confronted with this type of delay tactic —our patience is exhausted with you and your co-defendant. We must do something about your case. Now, we are acting in good faith and without prejudice to you and we are giving you every safeguard we know but I am going to tell you now that I have offered you counsel under the Criminal Justice Act and you have refused it. Isn't that correct?" Bostick's reply was, "I cannot sign a pauper's oath."

To Judge Suttle's question as to whether he would accept court-appointed counsel if relieved of the obligation to sign the pauper's affidavit, Bostick answers, "No, sir. I will not."

At this point Judge Suttle continues the case until the following Monday, June 6, with the most forceful admonition that the case will be tried at that

time whether the defendants have counsel or not.

At this point Lainhart and his court appointed counsel again enter the picture. Lainhart unqualifiedly refuses to sign an affidavit of indigency. Nevertheless Judge Suttle tenders him court appointed counsel, offering to request that the counsel serve without compensation.

Thus it appears that the case will be tried June 6 irrespective of representation.

6–2–66 (Thursday):

The defendants are returned to court. Judge Suttle, apparently having second thoughts about having declined permission to Luker to practice, inquires of Bostick as to whether he wishes to be represented by Luker in light of his limited experience and with the outstanding criminal indictment. Bostick declines to go forward with Luker.

Bostick states that he "would like advice from competent counsel as to what I should do at this point." Judge Suttle appoints R. J. Piro (of Baker, Botts, Shepherd & Coates), and H. M. Reasoner (of Vinson, Elkins, Weems & Searls) to represent Bostick. He makes it clear that they are to prepare as best they can, and to assert their best efforts in Bostick's behalf, but that the case will be tried Monday, June 6.

At this point Bostick and his counsel (or lack of it) enter the picture. Having conferred with Messrs. Piro and Reasoner, he advises the Court that his statement that he wanted to advise with counsel did not mean he was accepting these two attorneys, but he wanted to advise with counsel so he could determine whether to continue with Mr. Luker. He advised the Court that he was in the process of hiring still additional counsel (Mr. Schultz) who was then preparing himself.

Judge Suttle explains again the rights of every defendant to a speedy trial and notes that these defendants have been in jail some six months. Bostick comments, "We have urged for continuance and we waive our rights for a speedy trial." Following a recess these defendants are again brought to court. One of the appointed counsel for Bostick having advised the Court that he was not experienced in criminal matters, Judge Suttle appoints a third counsel to assist Bostick, namely, Mr. Petry.

Thus the court recessed until the following Monday, June 6. In this connection I might note that I am aware of the fact that the appointed counsel worked diligently and arduously over the week-end in preparation for the June 6 trial. The defendants, however, had a few ideas remaining.

6–6–66: Messrs. Petry, Piro, and Reasoner appeared and announced ready for Bostick, subject to a long series of motions just filed. These attorneys had recruited further assistance over the weekend and introduced Mr. Lynn Coleman (of Vinson, Elkins, Weems & Searls) and Mr. Thad Hutcheson of Hutcheson, Taliaferro & Hutcheson) as additional attorneys (without compensation) to represent Bostick. At this point Bostick announces that he does not accept any of these attorneys to represent him, nor will he proceed without an attorney.

Messrs. Stack and Pound on behalf of Lainhart likewise announce ready, subject to certain motions.

Thus faced with the prospect of immediate trial and unable to secure further delay, the defendants play their last trump. Bostick files a motion under § 144 of Title 28 U.S.C.A. stating under oath that Judge Suttle is biased and prejudiced against him.

Again both defendants disclaim the attorneys appointed by the Court to represent them and all court-appointed counsel are excused.

6–17–66 (Judge Ingraham presiding):

Defendants again appear in open court with the counsel appointed by Judge Suttle. The case previously has

been set for trial for June 20. In the light of the defendants' statements that the appointed counsel were not acceptable, on this date Messrs. Coleman and Reasoner filed a motion to be relieved by court order. In the meanwhile, however, and since the last appearance, the defendants by handwritten motion asked that the lawyers be retained.

Messrs. Pound and Stack likewise have asked to be relieved of record from representing Lainhart.

Judge Ingraham reviews at some length what has transpired. Both Bostick and Lainhart assure him that they are able to employ counsel and that they had objected to the appointment of counsel for them by Judge Suttle.

Judge Ingraham permits Reasoner, Coleman, Piro, Stack and Pound to withdraw.

It is noted that Petry (previously appointed for Bostick) made no motion to withdraw and so advises the Court. As noted later, it develops that Petry had known and represented Bostick earlier, and he continued to represent Bostick throughout the later trial.

In light of the confused situation which prevailed, Judge Ingraham continued the case and reset it for July 18.

Bostick and Lainhart at this point present motions for reduction of bond, in support of which Bostick testifies under oath as to the difficulties of contacting a prospective attorney, limited use of phone privileges, etc.

During his testimony Bostick states that he has probably $2500 in bank and savings and loan accounts, together with certain real estate. In reply to his testimony of inability to contact and to confer with lawyers, the government offered jail records to show that Bostick had received 53 lawyer-visits during his incarceration. Lainhart also had been visited frequently.

7–7–66: The case having been set for July 18, before Judge Connally, on this date the defendants were brought into open court again. Their rights to ap-pointed counsel were again explained. Each defendant (Bostick and Lainhart) stated that he was not an indigent and that he did not wish appointed counsel, and each stated that he recognized that it was his own responsibility to procure counsel. The Court permitted Bostick, in his own behalf, to present and argue the assortment of motions which had previously been filed and not acted on.

The defendant Lainhart adopted the same course. Both defendants are strongly admonished to procure counsel and to be ready for trial on July 18.

7–18–66 (Judge Connally presiding);

Mr. Petry appears for the defendant Bostick. Lainhart is not represented by counsel and defends himself. A third defendant, Yerger (who had been relatively inactive in all of the preceding matters) is represented by counsel of his choice.

Lainhart makes a further motion for continuance by reason of his being without counsel which is denied.

The trial proceeds.

Thus these defendants remained in custody from December 1965 until July 1966 awaiting trial.

Despite their repeated assurances that they were not indigents, each defendant made an affidavit of indigency and requested, and was allowed, an in forma pauperis appeal.

Thereafter the Court of Appeals for the Fifth Circuit denied the application of each defendant for a reduction of bond pending appeal (November 18, 1966).

Having remained in custody from July 1966 to date awaiting appeal, and on the eve of submission of the appeal, this defendant now asks that he be released on his own recognizance. Bearing in mind that Judge Hannay in the early stages reduced the original bond after allowing a hearing on the matter, and having heard the evidence in the case, I am not prepared to grant this motion. This is particularly so in light of the fact that the Court of Appeals as noted, under

date of November 18, 1966, apparently was of the same view.

From the evidence in the case and from the developments mentioned above, I have reason to believe that none of the conditions set out in the Bail Reform Act of 1966 will reasonably assure that the defendant Lainhart will not flee or pose a danger to other persons or to the community. This motion coming at this late date brings to mind the thought that if this defendant be released, it is highly probable that he would secure the fruits of his crime and flee the jurisdiction. Hence the motion is denied.

Done at Houston, Texas this 7th day of November, 1967.

(Signed) BEN C. CONNALLY
United States District Judge