# In the Iowa Supreme Court

No. 23–1063

Submitted November 14, 2024—Filed January 10, 2025

**State of Iowa,**

Appellee,

vs.

**Alison Elaine Dorsey,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cass County, Amy Zacharias, judge.

The defendant appeals her convictions for second-degree murder and child endangerment resulting in death following the district court's order changing venue out of Cass County after her first trial ended in a hung jury. **Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Reversed and Case Remanded.**

Oxley, J., delivered the opinion of the court, in which Waterman, Mansfield, and McDermott, JJ., joined. Waterman, J., filed a concurring opinion, in which Mansfield, J., joined. McDonald, J., filed a dissenting opinion, in which May, J., joined. Christensen, C.J., took no part in the consideration or decision of the case.

Trevor Hook (argued) and William L. Kutmus of Kutmus, Pennington & Hook, P.C., West Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

**Oxley, Justice.**

A criminal trial is required to be held in the county of the offense. A district court can move the trial to another county only if a party shows that a fair and impartial jury cannot be seated from residents of that county. This often arises when pervasive and inflammatory publicity surrounding a high-profile case so influences the community about the merits of the case that a substantial number of community members who would serve on the jury would have difficulty being impartial factfinders. While it is generally the defendant who seeks to move a criminal trial to a different county based on such pretrial publicity, this case involves the State's request.

Alison Dorsey was charged with first-degree murder and child endangerment resulting in death after an eleven-week-old baby at her daycare died. Dorsey was tried in Cass County, population 13,000, and the jury was unable to reach consensus on a verdict. The district court declared a mistrial, and the State immediately filed a motion to change the venue to a different county. The second trial was continued, and ultimately, over Dorsey's objection, the district court granted the motion and moved the venue for Dorsey's second trial to Pottawattamie County. Dorsey was convicted of the lesser included offense of second-degree murder and the offense of child endangerment resulting in death. On appeal, she challenges, *inter alia*, the transfer of venue out of Cass County.

The party seeking to change venue must demonstrate "that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R. Crim. P. 2.11(10)(*b*) (2022). As our cases dealing with a defendant's request for change of venue reveal, this is not an easy

standard to meet. The state must be held to at least as stringent of a standard in seeking to transfer the venue of a trial to a new county as the defendant. In this case, the district court short-circuited the process when it chose to "err on the side of caution" and grant the State's motion to change venue based on publicity that was stale and not overly prejudicial without even attempting to seat a second jury in Cass County. We conclude that the district court abused its discretion in granting the State's motion to change venue out of Cass County, and Dorsey is therefore entitled to a new trial.

## I. Factual Background and Proceedings.

Alison Dorsey ran an in-home daycare in Massena, Cass County, Iowa, since 2002. She had cared for approximately 120 infants and children in her daycare without any complaint or significant incident before the death underlying this case in 2019. Kaitlin and Nicholas Hodges thought highly of Dorsey, who had provided daycare services for their children in the past. When Kaitlin and Nicholas learned that they were expecting twins, they arranged for Dorsey to care for them. The twins—L.H. and R.H.—were born on July 22, 2019. Their pediatrician, Dr. Joshua Kindt, last saw L.H. at his two-month appointment on September 24, describing L.H. as a "healthy, thriving normal baby."

On October 7, Nicholas dropped off three of the Hodges's children—eleven-week-old L.H. and R.H. and the twins' two-year-old sibling K.H.—at Dorsey's shortly before 8:00 a.m. It was the twins' first day of daycare, and L.H. appeared "just fine." Around 9:00 a.m., Dorsey sent a photo of the twins commemorating their first day of daycare to Kaitlin and Nicholas. L.H. still appeared to be in a healthy condition, with a normal color appearance. According to Dorsey, around 10:45 a.m., she noticed that L.H. was gasping for air. She sat

L.H. upright and tried to burp him. Eight minutes later, at 10:53 a.m., Dorsey called Kaitlin because L.H. was "having a hard time breathing" and "wasn't eating." Dorsey held the phone up to L.H. to see if Kaitlin could hear him over the phone. Kaitlin did not hear anything, let alone anything that sounded like breathing issues. Dorsey called Nicholas immediately after, at 10:57 a.m., because she was concerned and knew that he worked just a couple of blocks away at the high school.

Nicholas arrived at Dorsey's within a few minutes. When Nicholas walked in, he observed Dorsey holding L.H. in her left arm and that L.H. was limp, blueish-gray, and not breathing. Dorsey told Nicholas that "he went limp" right when Nicholas opened the door. Nicholas took L.H. into his own hands, and there were no signs of life—L.H. was completely limp with no muscle movement. He checked for a heartbeat and any airflow and could not detect either. Nicholas instructed Dorsey to call 911 because she had yet to call for medical assistance.

Nicholas, who is trained in CPR, attempted to administer CPR on L.H. He was relieved by Deputy Williams Ayers and emergency medical technicians (EMTs) who arrived at the scene within minutes. L.H. was taken by ambulance to Cass County Memorial Hospital. The doctors were able to revive his heartbeat, but there was no brain activity. A CT head scan identified intracranial hemorrhage—i.e., bleeding within the skull.

L.H. was then life-flighted to Children's Hospital and Medical Center in Omaha, Nebraska. L.H. never regained consciousness and was taken off life support on October 8. He died the same day.

Associate State Medical Examiner Kelly Kruse performed an autopsy on L.H., concluding that the cause of death was "blunt force injuries of head." She further identified the injury as including "diffuse subdural

hemorrhage"—bruising on his scalp, bleeding on the surface of his brain, swelling around his brain, extensive hemorrhage within and around his eyes, and partial detachment of the retina. No skull fractures were identified. "In the absence of an explanation for the head trauma," she certified the manner of death as "undetermined."

In February 2020, Dorsey was charged by criminal complaint with (1) first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (2019), a class "A" felony, and (2) child endangerment resulting in death in violation of Iowa Code section 726.6(4), a class "B" felony.

On October 26, 2021, Dorsey's first criminal jury trial began in Cass County. Because the case was well-known in Cass County, the district court summoned a larger-than-normal pool of one hundred potential jurors and distributed questionnaires asking, *inter alia*, if they had prior familiarity with any of the parties or witnesses or with the facts of the case. The parties agreed to individually question potential jurors who answered any of the questions affirmatively so as not to taint the entire jury pool. Over the course of a full day, the district court conducted seventy individual voir dire interviews "to listen very closely and make good decisions" as to "whether or not [prospective jurors] could listen to all the evidence and be fair and impartial." Before questioning the entire jury pool in the same room, the district court generously granted for-cause dismissals—dismissing thirty-nine prospective jurors. Thirty-three were dismissed because they would have been unable to listen to all the evidence and make a fair decision. In all, the parties went through eighty members of the one-hundred-member jury pool to get to a panel of thirty-six.

The next morning, Dorsey and the State questioned the thirty-six jury panelists in the same room. The district court conducted one more individual

voir dire interview and granted nine additional for-cause dismissals—with six of those prospective jurors dismissed because they would have been unable to listen to all the evidence and make a fair decision. Notwithstanding the number of prospective jurors with an incoming bias about the case and individual voir dire interviews taking a full day, the State does not dispute that the district court ultimately seated an impartial jury in one and a half days.

The parties put on their evidence, and the case was submitted to the jury for deliberation. But the jury could not reach a unanimous decision, and the district court declared a mistrial on November 4. On November 16, the State filed a motion for change of venue asserting that it could not receive a fair trial in Cass County based on the district court's experience with jury selection in Dorsey's first trial, a "social media campaign" by Cass County community members, and local media coverage during and after trial. The same day, the court scheduled Dorsey's second trial to begin on January 31, 2022. Then, on December 17, 2021, Dorsey's trial was continued another six months, with a new trial date of June 20, 2022.

Dorsey did not file a written resistance to the State's motion for change of venue, but she orally resisted at a hearing on the matter held on April 19, 2022. On April 27, following the hearing on the State's motion for change of venue and with Dorsey's second trial still two months out, the district court granted the State's motion and transferred venue to Pottawattamie County.

After another continuance, Dorsey's second jury trial began in Pottawattamie County in May 2023. On the first day of trial, Dorsey renewed her challenge to the change of venue, which the district court denied.

Dorsey's second trial was largely presented as a battle between the parties' expert witnesses about the timing of the injury that resulted in L.H.'s death. The

State's witnesses testified that given the severity of L.H.'s injuries, the evidence was consistent with abusive head trauma (i.e., shaken baby syndrome or nonaccidental trauma), L.H.'s symptoms would have appeared very rapidly, and eleven-week-old babies are not able to inflict on themselves the injuries that L.H. sustained.

Dorsey's witnesses questioned whether shaking could have caused L.H.'s injuries, particularly because L.H. had no neck injury. Two of her expert witnesses used a technique called iron staining to analyze L.H.'s blood, and each testified that L.H.'s injuries were in the healing stage and several days old, necessarily occurring prior to L.H.'s first day of daycare. The State offered rebuttal testimony that challenged the reliability of using iron staining on infants, indicating that it can lead to false results.

Dorsey also called six witnesses who knew her through her daycare program and who testified to her peaceful and loving character. Dorsey wanted to call twelve character witnesses. But, on the State's motion, the district court decided that six character witnesses was a "good amount of testimony to have before the jury" and precluded Dorsey from calling any more as being overly cumulative.

The jury found Dorsey guilty of the lesser included offense of second-degree murder and the offense of child endangerment resulting in death. In June 2023, the district court merged the convictions and sentenced Dorsey to a fifty-year prison term with a thirty-five-year mandatory minimum. Dorsey timely appealed, arguing that (1) the district court abused its discretion in granting the State's motion for change of venue from Cass County to Pottawattamie County, (2) the State did not present sufficient evidence to support her convictions, (3) the convictions were against the weight of the

evidence, (4) the district court abused its discretion by admitting evidence about a rib injury to L.H.'s older brother, K.H., and (5) the district court abused its discretion by excluding six of her character witnesses. We transferred the appeal to the court of appeals, which affirmed her convictions.

We granted Dorsey's application for further review to examine the appropriateness of the change of venue requested by the State. As explained more fully below, we conclude that the district court abused its discretion by prematurely granting the State's motion for change of venue without even attempting to obtain an unbiased jury pool in Cass County, as it had in her first trial, and by basing its ruling on evidence of publicity that was not overly prejudicial. Dorsey is therefore entitled to a new trial.

**II. Analysis.**

**A. Sufficiency of Evidence.** This case was tried largely as a battle of the experts, with both sides presenting medical testimony to support their respective positions. We agree with the court of appeals' analysis that sufficient evidence supported Dorsey's convictions, and we let that opinion stand as the final decision on that issue. *See Farnsworth v. State*, 982 N.W.2d 128, 135 (Iowa 2022) ("When we grant further review, we may exercise our discretion to let the court of appeals decision stand as the final decision on particular issues." (quoting *State v. Fogg*, 936 N.W.2d 664, 667 n.1 (Iowa 2019))).[1]

---

[1]We address Dorsey's sufficiency of the evidence claim because if successful, Dorsey would be entitled to a remand for entry of acquittal, and the remaining issues seeking a new trial would be moot. *See State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019) ("If the trial record would not support a conviction on a given count, [the defendant] is entitled to an acquittal on that count, and further proceedings on that count must come to an end."); *see also* Iowa R. Crim. P. 2.19(8). Having passed on the sufficiency issue, for the reasons explained below, we reverse and remand for a new trial because the district court abused its discretion when it granted the State's motion to transfer venue out of Cass County. We do not address Dorsey's other evidentiary issues because they can be addressed first by the district court if and when they arise.

**B. Change of Venue.** Dorsey urges that the district court prematurely granted the State's motion for change of venue because the district court should have used the voir dire process that it used in Dorsey's first trial—eliminating prospective jurors with impartiality concerns through individual questioning based on questionnaire responses and then questioning the remaining jury panelists together—before making its ruling. The State, on the other hand, argues that the venue change was supported by the pretrial publicity (e.g., a "social media campaign" and local media coverage), the district court's experience with jury selection in Dorsey's first trial in a sparsely populated rural county, media coverage during the trial, and posttrial social media discussions. The State attached over one hundred pages of newspaper articles, church bulletins, and Facebook posts from the general public and local news and radio stations to its November 16, 2021 motion for change of venue to illustrate the "social media campaign" and local media coverage.

1. *Standard of review.* "Our [standard] of review on [a district court's change of venue ruling] is unique. We look to the record de novo and, on that basis, determine whether the trial court abused its discretion." *State v. Love*, 302 N.W.2d 115, 122 (Iowa 1981) (en banc), *overruled on other grounds by State v. Reeves*, 636 N.W.2d 22 (Iowa 2001); *see also State v. Newell*, 710 N.W.2d 6, 33 (Iowa 2006) (" '[The] right to a fair trial by impartial jurors has its underpinnings in our state and federal constitutions.' Therefore, our review is de novo. 'Reversal is warranted only where the trial court's decision demonstrates an abuse of discretion.' " (alteration in original) (quoting *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990))); *State v. Robinson*, 389 N.W.2d 401, 403 (Iowa 1986) (en banc) ("We review the record de novo to determine whether the trial court abused its discretion in denying a [change of venue] request."); *State v.*

*Spargo*, 364 N.W.2d 203, 207 (Iowa 1985) ("Our review on [a change of venue motion] is de novo, with reversal indicated only if the trial court abused its discretion in denying the motion."); *State v. Ware*, 338 N.W.2d 707, 713 (Iowa 1983) ("We have reviewed the record de novo making an independent evaluation of the circumstances to determine whether the trial court abused its discretion in denying the request for change of venue."); *State v. Paulsen*, 293 N.W.2d 244, 247 (Iowa 1980) ("We . . . review the record de novo to determine whether trial court abused its discretion when granting the venue change.").

A district court abuses its discretion when it "relies on an improper legal standard or applies the law in error." *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 482 (Iowa 2016); *see also In re Condemnation of Certain Rights in Land for Extension of Armar Drive Project By City of Marion*, 974 N.W.2d 103, 111 (Iowa 2022) ("Misapplying a rule of law is an abuse of discretion."); *State v. Majors*, 897 N.W.2d 124, 126–27 (Iowa 2017) (holding that a sentencing court abuses its discretion if it, *inter alia*, "fails to consider a relevant factor that should have received significant weight [or] gives significant weight to an improper or irrelevant factor" (quoting *United States v. Haack*, 403 F.3d 997, 1004 (8th Cir. 2005))).

2. *Balancing the right to an impartial jury against the statutory mandate to hold trial in the county in which the offense occurred.* By statute, venue for a criminal trial is set in the county of the offense: "A criminal action shall be tried in the county in which the crime is committed, except as otherwise provided by law." Iowa Code § 803.2(1). One such "other law" is Iowa Rule of Criminal Procedure 2.11(10), which provides: "If the court is satisfied from a motion for a change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be held that there

is a *substantial likelihood a fair and impartial trial cannot be preserved* with a jury selected from that county," the district court "shall" move the trial "to another county in which the offensive condition does not exist" or impanel a jury from another county to be brought into the original county. Iowa R. Crim. P. 2.11(10)(*b*) (emphasis added).

The statutory mandate to hold trial in the county of the offense codified an "ancient right" that is "well recognized at common law." *State v. Manning*, 495 S.E.2d 191, 194 (S.C. 1997) (citing 4 William Blackstone, *Commentaries* 349–50); *see also State ex rel. Fletcher v. Dist. Ct.*, 238 N.W. 290, 293 (Iowa 1931) ("[A]t common law all offenses must be inquired into as well as tried in the county where the fact is committed." (citing 4 William Blackstone, *Commentaries*, 303 et seq.)).

> Because the situs of the alleged crime is usually the home of the defendant, this right allows the defendant to surround himself with the influences of his good character, if he has established one, and the witnesses are accessible for the purpose of trial. "To deprive a defendant of these influences and privileges would constitute a great injury to him."

*Manning*, 495 S.E.2d at 194 (citation omitted) (quoting *State ex rel. Sullivan v. Patterson*, 165 P.2d 309, 313 (Ariz. 1946)). At the same time, our venue transfer rule recognizes that "a fair trial by an impartial tribunal is the most essential requirement of due process." *Siemer*, 454 N.W.2d at 861. Thus, we have said that "trial courts must carefully scrutinize jurors' protestations of impartiality where large numbers of venire persons hold fixed opinions of the accused's guilt." *Id.* Nearly a century ago, our legislature recognized that the state has a similar right to a fair trial before an impartial factfinding body, and, by statute, it granted the state the right to change the venue of a trial. *See Fletcher*, 238 N.W. at 293 ("Quite likely the Fortieth General Assembly had heard rumblings of local

'rebellions' or of hostility to enforcement and consequent defiance of such laws of the state as might not be locally popular. Anyhow, the Legislature recognized the validity of the proposition that the state, if unable to receive a fair and impartial trial, ought equally with the defendant to have the right to a change . . . ."). Thus, while trials are statutorily required to be held in the county of the offense, defendants and the state both have the right to change the venue upon a proper showing.

Although most of our cases involve the denial of a defendant's request for a change of venue, *see, e.g., State v. Evans*, 671 N.W.2d 720, 727 (Iowa 2003); *Siemer*, 454 N.W.2d at 861; *State v. Harris*, 436 N.W.2d 364, 367 (Iowa 1989); *State v. Wilson*, 406 N.W.2d 442, 444–46 (Iowa 1987), here, the State moved for a change of venue. Iowa's change of venue rule does not distinguish between motions brought by the prosecution or the defense. *See* Iowa R. Crim. P. 2.11(10)(*b*); *see also Paulsen*, 293 N.W.2d at 247–48 (analyzing a change of venue motion requested by the state). Where the venue transfer rule is neutral and allows either party to request a change, the principles remain the same. It should be at least as difficult for the state to get a venue change as it is for the defendant. *See Fletcher*, 238 N.W. at 293 ("The same statute gives the same right to either party. The duty of the court in acting on the application is the same whichever party is applicant."); *see also Paulsen*, 293 N.W.2d at 247–48 (applying the standard from cases addressing a defendant's request to change venue to the state's request).

To show that a change of venue is warranted, the moving party "must show (1) publicity attending the trial that is so *pervasive and inflammatory* that prejudice must be presumed, or (2) actual prejudice on the part of the jury." *Siemer*, 454 N.W.2d at 860 (emphasis added). "Whether publicity rises to the

level of being presumptively prejudicial depends on the following factors: the nature, tone, and accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire." *Id.*

> Exposure to news accounts does not by itself create a substantial likelihood of prejudice in the minds of prospective jurors. The crucial determination is whether, as a result of pretrial publicity or for other reasons, a substantial number of prospective jurors hold such fixed opinions on the merits of the case that they cannot impartially judge the issues to be determined at trial.

*Harris*, 436 N.W.2d at 367 (citation omitted). Thus, the focus is on whether a substantial number of potential jurors from the county could not be impartial, a fact that cannot be presumed without assessing the actual impact on the potential jurors.

3. *Whether the district court abused its discretion.* Applying a de novo review of the record, we conclude that the district court abused its discretion in prematurely granting the State's motion for change of venue where it focused on the logistics of the second trial without even attempting to seat an impartial jury in Cass County.

The State filed its motion for change of venue on November 16, 2021—twelve days after the district court declared a mistrial in Dorsey's first trial because the jury was unable to reach a unanimous verdict. When the district court held a hearing on the matter five months later, in April 2022, Dorsey's second trial was scheduled to begin two months later, on June 20.

At the hearing, Dorsey argued that the State's motion was premature, relying primarily on *State v. Finn*, No. 18–0181, 2020 WL 5943992 (Iowa Ct. App. Oct. 7, 2020). In *Finn*, the district court found that the defendant's motion to transfer venue based on pretrial publicity lacked evidentiary support, but it delayed ruling on the matter pending the distribution of questionnaires to survey

potential jurors about their knowledge of the case. *Id.* at *4–5. The district court convened 314 potential jurors and ultimately denied the motion because "a detailed juror questionnaire" could ferret out "a strong bias or prejudice against" the defendant. *Id.* at *4. The court of appeals found no abuse of discretion in denying the change of venue motion, stating: "The fact that 146 of the [potential jurors] were excused for cause is a testament to the importance placed on the voir dire process." *Id.* Dorsey asked the district court to use a similar voir dire process—as it did in her first trial—before ruling on the State's motion for change of venue.

The State focused its argument on the district court's experience with jury selection during Dorsey's first trial, emphasizing "the sheer volume of . . . potential jurors that knew people in the case and about the case and had really strongly fixed opinions about how they felt the case should go"—i.e., "the impact of the publicity on the jurors as revealed through voir dire," *Siemer*, 454 N.W.2d at 860. The State noted that unlike in *Finn*, the district court already had a jury selection process where a large number of potential jurors were dismissed for cause. In the State's view, this case was closer to *State v. Robinson*, where the "barrage of unmistakable warning signals that few people had an open mind on the questions of defendant's guilt" necessitated a change of venue. 389 N.W.2d at 403. The State argued that "an aggressive social media campaign" also necessitated a change of venue.

During the hearing, the district court noted the number of potential jurors and the amount of time it took to select the first jury. Although the second trial was still two months out, the district court explained its hesitation with Dorsey's request to use questionnaires:

> Logistically my concern is that if I were to follow your procedure and we send out the questionnaires and try to eliminate people, then we

> end up in a place where we start picking a jury on June 20th and everyone has experts, has witnesses scheduled on certain days -- because, let's be honest, the State has just as many experts as the defense does and very tight time lines. We went from the beginning of November until the end of June before the attorneys could get their schedules to align, let alone we have experts coming in.

The State estimated that they would need to call 300 prospective jurors, and the district court reiterated its concern that it would take multiple days to pick a jury, creating logistical concerns with the timely availability of the witnesses.

We agree with Dorsey that the district court abused its discretion when it relied on its concern about the logistics of the trial to grant the State's motion for change of venue before even attempting to assemble a jury pool for the second trial. Voir dire is a critical part of determining whether an impartial jury can be selected in the county of the offense. *See Siemer*, 454 N.W.2d at 859–61 (noting that the district court conducted a careful voir dire of the jury pool); *Robinson*, 389 N.W.2d at 403 ("The trial court did not during voir dire seem impressed with those future developments, but we certainly are."). "Voir dire of prospective jurors should be trusted to expose any substantial prejudices among the jurors." *Ware*, 338 N.W.2d at 713 (quoting *State v. Chadwick*, 328 N.W.2d 913, 916 (Iowa 1983)); *see also State v. Cuevas*, 288 N.W.2d 525, 527–28 (Iowa 1980) (noting that the parties "heed[ed] the suggestion made in *State v. Davis*" to report voir dire when venue is challenged and explaining that the district court did not abuse its discretion in denying a change in venue where "[t]he transcript of that examination reveals careful questioning of each prospective juror"); *cf. Evans*, 671 N.W.2d at 727 (concluding that the district court could not presume prejudice from pretrial publicity where voir dire was not reported because there was "no way of knowing the impact of publicity on the jurors").

The problem with the State's position is that it relies on the voir dire from Dorsey's first trial—where the district court was able to seat an impartial jury through a careful voir dire process. We recognize that the district court expressed concern that it might run out of jurors during jury selection in the first trial. But there is no dispute that the parties were ultimately able to select an impartial jury in one and a half days using the original one-hundred-member jury pool. This is neither an exceptionally long period of time to select a jury nor an unusually large jury pool, even in a small rural county. And we see no reason why the district court could not have used the same voir dire process before ruling on the State's motion for change of venue, particularly with the second trial still two months out. The district court's experience from the first trial would justify summoning a larger-than-normal number of people for jury duty and providing a similar questionnaire in an attempt to obtain an unbiased pool. As Dorsey notes, Cass County has 6,000 registered voters from which to draw a jury pool. The district court was able to seat an impartial jury in Dorsey's first trial using a pool of only one hundred jurors. The fact that the district court granted forty-eight for-cause dismissals in Dorsey's first trial reveals that the district "court exercised abundant caution in dismissing for cause the venire persons who held negative attitudes toward the crime, generally, or against [Dorsey or the State] particularly." *Siemer*, 454 N.W.2d at 861; *see also State v. Morgan*, 559 N.W.2d 603, 611 (Iowa 1997) (holding that the district court did not abuse its discretion in denying defendant's motion to change venue where "[o]nly those who stated that they could set aside previously formed opinions were retained"). By engaging in this voir dire process for Dorsey's *first* trial, the district court properly balanced the right to an impartial jury against the requirement to hold trial in the county in which the offense occurred—where Dorsey was

"surround[ed] . . . with the influences of [her] good character." *Manning*, 495 S.E.2d at 194. That the case had to be retried following the hung jury does not excuse the district court from attempting to keep the trial in the county of the offense as required by Iowa Code section 803.2(1). Nor do logistical concerns like witness availability override the statutory mandate to hold trial in the county of the offense unless the moving party meets its burden of proving that there is a "substantial likelihood a fair and impartial trial cannot be preserved" without changing the venue. It certainly does not justify "erring on the side of caution" and granting the State's change of venue request without first trying to obtain an unbiased jury pool.

The district court also abused its discretion by relying on stale information that was not particularly prejudicial against the State. Critically, the State presented no new evidence at the hearing to demonstrate "pervasive and inflammatory" publicity, *Siemer*, 454 N.W.2d at 860, relying instead on the original attachments filed twelve days after the district court declared a mistrial. There was a five-month gap between the evidence of publicity surrounding the case immediately following the mistrial and the district court's ruling. The timing of the prejudicial material "in relation to the trial" is an important factor to consider in determining whether publicity prejudices a party. *See id.* at 859–61 ("The passage of time abated the barrage of media coverage which occurred when the story first broke."); *Spargo*, 364 N.W.2d at 208 (recognizing that a time lapse between two and three months "was sufficient to dissipate any prejudicial effect that may have been created initially by adverse publicity" and citing four other Iowa cases finding the same—ranging from eleven weeks, *State v. Loney*, 163 N.W.2d 378, 382 (Iowa 1968), to three months, *State v. Johnson*, 318 N.W.2d 417, 423 (Iowa 1982) (en banc)); *see also Patton v. Yount*, 467 U.S. 1025, 1035

(1984) ("But it is clear that the passage of time between a first and a second trial can be a highly relevant fact. In the circumstances of this case, we hold that it clearly rebuts any presumption of partiality or prejudice that existed at the time of the initial trial."). To assess whether that five-month gap "dissipate[d] any prejudicial effect that may have been created initially by adverse publicity," *Spargo*, 364 N.W.2d at 208, the district court should have used the voir dire process to assess whether the publicity was "pervasive and inflammatory" enough to presume prejudice at the time of Dorsey's second trial, *Siemer*, 454 N.W.2d at 860.

Even considering the State's evidence, on our de novo review of the State's attachments to its motion for change of venue (newspaper articles, church bulletins, and Facebook posts from the general public and local news and radio stations that the State characterizes as "an aggressive social media campaign"), we do not believe that these materials amount to "pervasive and inflammatory" publicity. *Siemer*, 454 N.W.2d at 860. That demanding standard, imposed on defendants and the state alike, was not met here. It was certainly not so prejudicial to justify dispensing with the voir dire process. The church bulletins asked for prayer requests for "Travis and Ali Dorsey's Trial & all involved" but did not comment on the merits of the case. The Facebook posts from a few members of the general public mostly showed support for Dorsey and shared a prayer chain seeking "that true justice, may be carried out without impartiality" and "that [in] this matter we will soon be fully exonerated and totally vindicated, and that there will be no slur on anyone's character or intentions." Other posts sought "#JusticeFor[L.H.]." There is no evidence of how widespread the posts—the vast majority of which had less than 100 comments and "likes"—were among residents of Cass County. Local newspapers and radio stations reported

on the trial and shared links on their own Facebook posts, with a handful of public comments supporting either Dorsey or L.H.'s family and some commenting on the evidence. The news stories and posts were "predominately factual and no more sensational than the crimes alleged." *Evans*, 671 N.W.2d at 727 (quoting *Siemer*, 454 N.W.2d at 861); *cf. Paulsen*, 293 N.W.2d at 247–48 (concluding, after an "independent evaluation of the record," that the district court did not abuse its discretion in moving the trial on bribery charges against the Scott County Sheriff out of Scott County based on "both a 'deluge' and an 'incessant bombardment' of pretrial media publicity sustained over a period of fourteen months covering the prosecution of defendant and several of his deputies," and noting that the defendant "tacitly acknowledged the existence of a condition of excitement and prejudice"). The State is not entitled to a venue change after an unfavorable hung jury based on predominately factual publicity following the first trial, and certainly not without showing its effect on a second potential jury in Cass County through voir dire.

Compare this evidence to that presented in cases where the defendant was denied a change of venue premised on pretrial publicity. For example, in *State v. Siemer*, the defendant was charged with confining and torturing his girlfriend's seven-year-old son. 454 N.W.2d at 858–59. After noting that the news coverage was largely factual and "[t]he passage of time abated the barrage of media coverage," we affirmed the denial of the defendant's motion to change venue because the district "court exercised abundant caution" in the voir dire process. *Id.* at 861. "Although sixty-two percent of the panel members questioned were dismissed for cause because they expressed preconceived notions about [the defendant's] guilt, of the jurors actually seated, only five reported holding an initial 'negative' impression of [the defendant] and none professed a fixed

belief concerning his guilt." *Id.* Thus, even though five seated jurors had an "initial 'negative' impression" against the defendant, he was still not entitled to move the trial where they had not "professed a fixed belief" about his guilt as determined through voir dire. *Id.* In *State v. Harris*, we held that the district court did not abuse its discretion in denying the defendant's change of venue motion despite the fact that "[t]he pretrial publicity in the present case was extensive, prolonged, contained some inaccurate information, and referred to some evidence not admitted at defendant's trial"—again relying on the district court's carefully conducted voir dire. 436 N.W.2d at 367.

Considering how we have applied this standard to a defendant's motion to change venue, the district court here could not presume prejudice against the State merely because it took extra work to seat an impartial jury in Dorsey's first trial. Without engaging in the voir dire process in Cass County for her second trial, the district court had "no way of knowing the impact of [the] publicity on the [prospective] jurors." *Evans*, 671 N.W.2d at 727; *see also Newell*, 710 N.W.2d at 33 (affirming the denial of defendant's motion for change of venue based on adverse publicity because the media coverage was not pervasive and inflammatory and the district "court extensively voir dired the jury panel"); *Cuevas*, 288 N.W.2d at 527–28 (affirming the denial of defendant's motion for change of venue because the publicity was not pervasive and inflammatory, the voir dire transcript "reveal[ed] careful questioning of each prospective juror concerning his or her knowledge of the persons and event in issue and his or her objectivity," and the jurors ultimately seated "declared that they could afford defendant a fair and impartial trial").

We appreciate that the district court judge was "on the ground" in the rural county and likely had a good sense of the general community outlook about this

case, particularly following the first trial. But given the length of time between the trials and the thin evidence of prejudicial publicity gathered by the State, the district court had an obligation to try to seat an impartial jury before granting the State's motion. The district court's statements during the hearing made it clear that the court was more concerned about logistical issues in completing the trial in the allotted time period than ascertaining whether the State met its burden of showing a substantial likelihood that an impartial jury could not be seated. This misdirection is confirmed by the district court's effort to "err on the side of caution," revealing that it did not apply as stringent of a standard to the State's request to change venue as is applied when the defendant seeks to move the trial. For the foregoing reasons, we conclude that the district court abused its discretion by granting the State's motion to move the trial out of Cass County. *See NuStar Farms*, 880 N.W.2d at 482 (holding that a district court abuses its discretion when it misapplies the law).

4. *Remedy.* Because the district court abused its discretion when it moved Dorsey's trial out of Cass County on the State's motion for change of venue, Dorsey is entitled to a new trial. *See, e.g., Manning*, 495 S.E.2d at 195–96 (reversing conviction and remanding for a new trial where the district court abused its discretion in prematurely changing venue on the State's motion); *Higginbotham v. State*, 101 So. 233, 237 (Fla. 1924) (reversing conviction and remanding for a new trial where the district court granted the state's motion for a change of venue "without having made an actual test to determine if it was practically impossible to obtain an impartial jury" in the county of the offense).

The State did not argue in its appellate brief that Dorsey needed to show prejudice from the trial being moved out of Cass County or ask us to apply a harmless error standard. When addressed at oral argument, the State responded

that there is "room for an additional prejudice requirement" and then argued there was no evidence that Dorsey received an unfair trial in Pottawattamie County. Whether Dorsey received a fair trial in Pottawattamie County has nothing to do with her separate right to be tried in Cass County as statutorily mandated by Iowa Code section 803.2(1).[2] *See, e.g., Manning*, 495 S.E.2d at 194 (explaining that "[t]o deprive a defendant of these influences and privileges would constitute a great injury to him" without subjecting the defendant to a harmless error analysis (quoting *Sullivan*, 165 P.2d at 313)).

When a district court erroneously denies a defendant's motion to change venue, prejudice to the defendant is subsumed within the merits of her challenge since the venue can only be moved by the defendant showing a substantial likelihood that a fair and impartial jury could not be seated. And she is entitled to a new trial when she successfully makes that showing. *See, e.g., Robinson*, 389 N.W.2d at 404 (reversing and remanding for a new trial based on the district court's erroneous denial of a defendant's motion to change venue). But when the

---

[2]The dissent's discussion of federal cases addressing a change of venue between divisions within a federal judicial district pursuant to Federal Rule of Criminal Procedure 18 under a type of forum non conveniens standard is simply inapposite where Iowa Code section 803.2(1) expressly requires the trial to be held in the *county* of the offense unless otherwise provided by law. *See United States v. Lewis*, 504 F.2d 92, 97 (6th Cir. 1974) ("Rule 18 merely states the traditional rule of 'forum non conveniens' and vests discretion in the District Court to determine the proper place of trial. Trial judges traditionally have been held to have wide discretion in disposing of change of venue motions." (citation omitted)); *Houston v. United States*, 419 F.2d 30, 33 (5th Cir. 1969) ("Manifestly, Rule 18 confers no absolute right upon the defendant but is a statutory statement of the traditional concept of 'forum non conveniens' relating to the appropriate forum within the district. As stated in *Bostick v. United States*, 400 F.2d 449 (5th Cir. 1968), under recent amendments to Rules 18 and 21, 'the division has no constitutional significance; the vicinage is the district.' 400 F.2d at 452. Rule 18 does not encompass an absolute right on the part of the appellant to be tried in a division of his choice but is a discretionary power of the Court to be exercised upon a showing of good cause."). In addition, Rule 2.11(10) imposes a much more stringent standard than Rule 18 for moving the trial. *Compare* Iowa R. Crim. P. 2.11(10)(*b*) (authorizing a change of venue only where the court finds "there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from" the county where trial is to be held), *with* Fed. R. Crim. P. 18 ("The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.").

district court erroneously grants the state's motion, as here, and moves the trial out of the county of the offense in violation of Iowa Code section 803.2(1), the effects of that error are difficult to assess. The basis for moving the trial was the purported difficulty for the State to receive a fair and impartial trial. The effect of the transfer on Dorsey was simply not at issue. To require the defendant to nonetheless prove prejudice on appeal in addition to proving the district court abused its discretion in granting the State's motion to move the trial imposes a burden that essentially insulates the move from review. *Cf., e.g., Weaver v. Massachusetts*, 582 U.S. 286, 298 (2017) (explaining that "a public-trial violation is structural for a different reason: because of the 'difficulty of assessing the effect of the error'" (quoting *States v. Gonzalez–Lopez*, 548 U.S. 140, 149, n.4 (2006))); *State v. Brimmer*, 983 N.W.2d 247, 270–71 (Iowa 2022) (holding that a defendant's right to a public trial was violated when his mother was excluded because of space constraints during COVID-19 and remanding for a new trial, explaining that regardless of whether the error affected the trial process, "the government is not entitled to deprive the defendant of a new trial" (quoting *Weaver*, 582 U.S. at 299)).

Given the unique nature of the right at issue, not only would a lesser remedy gut the statutory mandate to hold trial in the county of the offense when challenged by the state, but it would also encourage the state to seek a change of venue on a minimal showing and encourage courts to do what the district court did here: err on the side of caution by granting the state's request since it would be largely unreviewable under a harmless error analysis. We cannot condone this perverse result that essentially allows the state to change venue on a lesser standard than that required when the defendant seeks to change venue.

**III. Conclusion.**

Dorsey's conviction is reversed, and the case is remanded for a new trial.

**Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Reversed and Case Remanded.**

Waterman, Mansfield, and McDermott, JJ., join this opinion. Waterman, J., files a concurring opinion, in which Mansfield, J., joins. McDonald, J., files a dissenting opinion, in which May, J., joins. Christensen, C.J., takes no part.

**Waterman, Justice (concurring).**

I join the majority's well-reasoned opinion in full. I write separately to respond to the dissent and elaborate why the defendant's right to be tried in her home county where the alleged crime occurred cuts strongly against transfer to another county. Usually, it is the defendant electing to waive that right and transfer venue to avoid adverse local pretrial publicity. We have a dearth of caselaw in Iowa reviewing district court orders granting the *prosecution*'s motion to change venue over the defendant's objection. Rarer still is the scenario presented in today's case where neither side sought to change venue initially and the first trial resulted in a hung jury. The prosecution moved to change venue only after the jury in Alison Dorsey's home county voted ten to two to acquit her.[3]

The right of defendants to be tried in the vicinage where the crime occurred is enshrined in the Federal and Iowa Constitutions. *See State v. Rimmer*, 877 N.W.2d 652, 664–65 (Iowa 2016). In *State v. Rimmer*, we addressed the historical context for vicinage rights:

> "The Sixth Amendment . . . provides the right to trial in 'the state and district *wherein the crime shall have been committed.*' " [*State v. Liggins*, 524 N.W.2d 181, 184 (Iowa 1994)] (quoting U.S. Const. amend. VI). This is known as the Vicinage Clause. *See* 1 [Wayne R. LaFave et al., *Criminal Procedure* § 2.6(b), at 834 (4th ed. 2015) (hereinafter LaFave)]. Article V section 6 of the Iowa Constitution in turn provides district courts with jurisdiction over "civil and criminal matters *arising* in their respective districts." *Liggins*, 524 N.W.2d at 184 (quoting Iowa Const. art. V, § 6). "The provision for trial in the

---

[3]The State's appellate briefing does not dispute the ten-to-two vote to acquit mentioned repeatedly in Dorsey's appellate filings and in her district court motion for new trial after her conviction in Pottawattamie County. The State's resistance filed in district court did not dispute the ten-to-two vote to acquit in Cass County. If Dorsey's reference to that vote was inaccurate, presumably the prosecution would have said so in its filing. In my experience, prosecutors and defense counsel alike typically talk to jurors after a mistrial and learn how they voted. The vote can influence decisions on whether to retry the case or negotiate a plea bargain. And the vote can motivate a motion to change venue to another county.

vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 . . . (1958). In *United States v. Cabrales*, the United States Supreme Court noted, "Proper venue in criminal proceedings was a matter of concern to the Nation's founders. Their complaints against the King of Great Britain, listed in the Declaration of Independence, included his transportation of colonists 'beyond [the] Seas to be tried.'" 524 U.S. 1, 6 . . . (1998) (footnote omitted) (quoting The Declaration of Independence para. 21 (U.S. 1776)).

*Id.* at 664–65 (third alteration and first omission in original) (footnote omitted). The defendant's right to be tried in the vicinage where the crime occurred is well established.

The dissent downplays Dorsey's statutory right under Iowa Code section 803.2(1) (2019) to be tried in her home county where the alleged crime occurred. I agree that neither the Federal nor Iowa Constitution prohibits the prosecution from moving to transfer venue to another county within the same judicial district. Dorsey does not raise a constitutional challenge to the change of venue. But as the majority opinion aptly observes, Iowa's "statutory mandate to hold trial in the county of the offense codified an 'ancient right' that is 'well recognized at common law.'" (Quoting *State v. Manning*, 495 S.E.2d 191, 194 (S.C. 1997).) As the majority further observes, "this right allows the defendant to surround himself with the influences of his good character, if he has established one." (Quoting *Manning*, 495 S.E.2d at 194.) Indeed, Dorsey called nineteen character witnesses in her Cass County trial who had trusted their babies and toddlers to her daycare services in Cass County over the last seventeen years and who testified to Dorsey's loving, peaceable nature. Their testimony may have undermined the State's theory that Dorsey violently shook an eleven-week-old infant, inflicting fatal injuries, and the Cass County hung jury voted ten to two to acquit her. The State only then moved to transfer venue. In contrast, the jurors

in Pottawattamie County who convicted Dorsey of second-degree murder heard from only six character witnesses for Dorsey after the district court excluded testimony from another six Cass County parents.[4]

Iowa law allows the state to move to change venue to another county in criminal cases, but in my view, the district court should give considerable weight to the defendant's statutory right to be tried where the alleged crime occurred. As the South Carolina Supreme Court emphasized,

> [B]ecause a defendant's right to be tried in the county where the alleged offense occurred is defeated when the prosecution's request for a change in venue is granted, a court should exercise great care and deliberation when changing venue at the request of the prosecution, and the state's motion and evidence supporting its motion should be strictly scrutinized to ensure the defendant's right is not abused.

*Manning*, 495 S.E.2d at 195; *see also State v. House*, 978 P.2d 967, 980 (N.M. 1999) (recognizing that "the State bears a greater burden of proof" to change venue over the defendant's objection from the county where the crime occurred); *People v. Rogers*, 34 A.D.2d 598, 598 (N.Y. App. Div. 1970) ("We have heretofore held that while equality of procedural right to apply for a change of the place of trial of an indictment is now accorded to both parties by statute, the People carry a heavier burden of proof to be met in obtaining such a change.").

Most states and the federal rules do not even allow the prosecution to move to change venue. *See* 4 LaFave, § 16.3(d), at 890. In states that allow the prosecution to move to change venue to another county, the caselaw suggests

---

[4]Dorsey challenges the exclusion of these six character witnesses as an abuse of discretion. Our court does not reach that issue given the reversal and remand for a new trial. The district court on remand clearly has discretion to allow more character witnesses. Typically, the testimony of a character witness is brief. It is limited to "testimony about the person's reputation" or "testimony in the form of an opinion" and does not usually include "specific instances of the person's conduct." Iowa R. Evid. 5.405. In my experience, jurors can generally tell on their own when a party is wasting their time with unnecessary and duplicative character witnesses.

that "court[s] should exercise such authority with considerable caution in light of the defendant's important interest in being tried by a jury of the vicinage" and that the prosecution should bear "a heavier burden" than a defendant seeking to change venue. *Id.* § 16.3(d) nn.72–73 & 75, at 893 (collecting cases). I share the view of those courts that the state bears a heavier burden to change venue over the defendant's objection. The dissent is wrong to minimize Dorsey's statutory right to be tried in Cass County.

The dissent is also wrong to assert that any error in the venue change was harmless and that there is no remedy unless Dorsey proves she was prejudiced by trial in Pottawattamie County. The dissent's view is backward. We have determined that the State failed to meet its burden to show it was unlikely to get an impartial jury in Cass County to justify the change in venue over Dorsey's objection. It would be incongruous to now hold that Dorsey is stuck with the outcome of trial in the wrong venue unless *she* proves the Pottawattamie jury was not impartial. Dorsey was deprived of her statutory right to trial in Cass County; the State had no countervailing statutory right to trial in Pottawattamie County. As the majority opinion acknowledges, the defendant's right to a trial in the proper county would be meaningless without the remedy of a new trial after a conviction in the wrong county.

Our court has never affirmed a conviction after a criminal case is tried in the wrong venue over the defendant's objection. Nor have we indicated that a harmless error standard applies or that defendants must show they did not have an impartial jury in the wrong county, as the dissent contends. To the contrary, in *State v. Calhoun,* we reversed a conviction and remanded for dismissal when a criminal case was tried in the wrong county. 559 N.W.2d 4, 6 (Iowa 1997) (enforcing Iowa Code § 803.2(1)); *see also State v. Mendoza,* 258 N.W.2d 260,

269, 279 (Wis. 1977) (reversing conviction because trial court erred by changing venue over defendant's objection and remanding for new trial); *Manning*, 495 S.E.2d at 195–96 (reversing robbery conviction because the defendant was tried in the wrong county); *Ashley v. State*, 72 So. 647, 648–49 (Fla. 1916) (per curiam) (reversing murder conviction and ordering a new trial because the district court erred by granting the state's motion to change venue after the first jury hung in the defendant's home county).

The dissent relies heavily on inapposite federal precedent reviewing transfers within a judicial district pursuant to Federal Rule of Criminal Procedure 18 for the convenience of the parties and witnesses. Unlike Dorsey, the defendants in those federal cases lacked a statutory right to a trial in the county where the alleged offense occurred.[5] The dissent cites *United States v. Stanko*, 528 F.3d 581 (8th Cir. 2008), which cuts against the dissent's position as to remedy. The United States Court of Appeals for the Eighth Circuit held in *Stanko* that the district court erred by denying Stanko's motion to transfer venue from Omaha to North Platte because the government conceded that a trial in

---

[5]The dissent also relies on five inapposite venue cases from other states. In *State v. Hunt*, the Vermont Supreme Court held that it had properly ordered the contested change in venue; its comments about the lack of prejudice to the defendant are dicta. 555 A.2d 369, 373–74 (Vt. 1988). In *Perkins v. State*, a co-defendant moved to change venue, and the other defendant failed to object to the transferee county. 483 N.E.2d 1379, 1382–83 (Ind. 1985). In *Garza v. State*, the appellate court held that the trial court erred by granting the State's motion to change venue without allowing the defendant notice, an opportunity to object and be heard, and an evidentiary hearing required by statute, but affirmed his conviction in part because he failed to move for a change of venue from the transferee county. 974 S.W.2d 251, 257, 261 (Tex. App. 1998). By contrast, Dorsey objected to the State's motion to transfer venue and objected to trial there. In *Hernandez v. State*, the appellate court found no abuse of discretion on a "very slim" record after the trial court heard live testimony during a two-day hearing from twenty witnesses supporting the state's motion to change venue based on community bias favoring the defendant. No. 13–96–643–CR, 1999 WL 33756697, at *2–3 (Tex. App. Jan. 7, 1999). By contrast, the State offered no witness testimony to support changing venue for Dorsey's trial. In *State v. Golphin*, the court specifically relied on a North Carolina statute that permitted the district court to impanel a jury from a different county after both defendants consented. 533 S.E.2d 168, 191 (N.C. 2000). Unlike the defendants in *Golphin*, Dorsey never consented to changing venue.

North Platte would be overwhelmingly more convenient for Stanko and the witnesses. *Id.* at 586. The government nevertheless argued that his conviction should be affirmed because "Stanko failed to prove that he was prejudiced by the holding of trial in Omaha." *Id.* Like our court today, the Eighth Circuit panel rejected that backward argument that flipped the burden to the defendant. The Eighth Circuit panel instead determined that the district court's venue error resulting in trial in Omaha left it "no alternative" but to reverse Stanko's conviction and remand the case for a new trial, and it so held without requiring Stanko to show he did not get an impartial jury in Omaha. *Id.*

The brief filed by the State's highly experienced appellate counsel did not argue harmless error or Dorsey's lack of prejudice in Pottawattamie County. In district court, the prosecutor filed a resistance to Dorsey's motion for new trial and argued it should be denied because Dorsey failed to show prejudice from the venue change. The State abandoned that argument on appeal. *See Morris v. Steffes Grp., Inc.*, 924 N.W.2d 491, 498 (Iowa 2019) (holding that the appellee waived an argument it raised in district court by failing to brief it on appeal).[6] We should not deny a new trial on a ground abandoned on appeal and foreclosed by *Calhoun*. The majority correctly remands this case for a new trial in Cass County.

With these additional reasons, I join the majority opinion in full.

---

[6]The dissent cites *In re Detention of Blaise*, 830 N.W.2d 310, 320–21 (Iowa 2013), for the proposition that "the court may raise the issue of prejudice and/or harmless error sua sponte." But we reached the prejudice issue in that case only after concluding "that the parties' arguments raise the prejudice issue implicitly." *Id.* at 320. While noting that courts have "cautiously" exercised discretion to conduct "sua sponte harmless-error review," we observed that "courts have been mindful of concerns that sua sponte consideration of harmlessness may burden reviewing courts, may give the state needless and unfair opportunities to show harmlessness, and may be inequitable in allowing reviewing courts to construct the state's best harmlessness arguments without providing appellants an opportunity for response." *Id.* All those concerns are present here. This case is not a candidate for a sua sponte harmlessness analysis.

Mansfield, J., joins this concurrence.

**McDonald, Justice (dissenting).**

This case raises a nonconstitutional question regarding the appropriate venue to conduct a criminal trial. The district court has broad discretion in making that determination, and the district court did not abuse that discretion. Further, the defendant "is not entitled to a perfect trial, but only a fair trial." *State v. Webster*, 865 N.W.2d 223, 233 (Iowa 2015). In the absence of evidence that Dorsey suffered prejudice in being tried in a county different than the one in which the crime was committed, her convictions should be affirmed.

A criminal defendant has no federal or state constitutional right to be tried in the county in which the crime allegedly was committed. *See State v. Donnelly*, 242 N.W.2d 295, 297 (Iowa 1976) ("There is no constitutional provision limiting the power of the state legislature to permit trial of criminal cases in a place other than where the crime was committed."); *Garza v. State*, 974 S.W.2d 251, 261 (Tex. Ct. App. 1998) (stating that a defendant has "no constitutionally protected interest in being tried in a particular county"). The Federal Constitution has two provisions related to venue and vicinage in criminal trials. The Constitution provides, "The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed . . . ." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment provides that the accused shall have the right to trial "by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." *Id.* amend. VI. "The provision in Article III is literally a venue provision because it fixes the place of trial, whereas the Sixth Amendment is a vicinage guarantee because it determines from where the jurors in a criminal trial shall be selected." *United States v. Perez*, 280 F.3d

318, 328 n.6 (3d Cir. 2002). The federal venue and vicinage provisions have not been incorporated against the states. *See Stevenson v. Lewis,* 384 F.3d 1069, 1071 (9th Cir. 2004) ("The Supreme Court has not decided whether the Fourteenth Amendment incorporated the . . . vicinage right. Neither have we. The only circuits to squarely address the issue have concluded that the Fourteenth Amendment did not extend federal vicinage protection to the states."). The Iowa Constitution has no venue or vicinage limitation. Instead, it provides only that "the accused shall have a right to a speedy and public trial by an impartial jury." Iowa Const. art. I, § 10.

The court correctly does not rely on any constitutional argument to support its opinion, but the concurrence appears to do so. While conceding there is no federal or state constitutional right at issue in this case, the concurrence nonetheless relies on constitutional rhetoric in support of an argument that moving this trial one county west raises constitutional concerns. It does not. Constitutional caselaw is contrary to the concurrence's constitutional rhetoric. If this case involved a federal crime committed in Davenport, Iowa, the case would be venued in the United States District Court for the Southern District of Iowa, Eastern Division, Davenport. The Federal Constitution would not prohibit the case from being transferred from the Eastern Division in Davenport to the Western Division in Council Bluffs, some 293 miles away. *See United States v. Alvarez,* 561 F. App'x 375, 381 (5th Cir. 2014) (per curiam) ("[B]ecause venue exists anywhere within the judicial district in which the crime was committed, there is no right to trial within a particular division in a district." (alteration in original) (quoting *United States v. Weddell,* 800 F.2d 1404, 1406 (5th Cir.), *amended on other grounds by* 804 F.2d 1343 (5th Cir. 1986))); *United States v. Richardson,* 537 F.3d 951, 959 (8th Cir. 2008) (stating that the defendant "does

not have a right to have his trial in or jurors summoned from a particular division of the state and district where the crime was committed"); *United States v. Stanko*, 528 F.3d 581, 584 (8th Cir. 2008) ("[A] defendant does not have a right to be tried in a particular division." (quoting *United States v. Wipf*, 397 F.3d 677, 686 (8th Cir. 2005))); *United States v. Faulkner*, 17 F.3d 745, 757 (5th Cir. 1994) ("[W]e find it equally clear that the place assigned for trial within a judicial district is not a matter of constitutional dimension."). If the Federal Constitution and constitutional precedents do not prohibit the transfer of a federal criminal case within the same district almost 300 miles from the place where the crime occurred, then the constitutional concerns raised in the concurrence cannot prohibit the transfer of a state criminal case 49 miles from the Cass County Courthouse in Atlantic to the Pottawattamie County Courthouse in Council Bluffs, which are within the same judicial district within a unified district court.

In the absence of any recognized federal or state constitutional right to be tried in the county in which the crime was committed, venue in a criminal proceeding is simply a procedural matter governed by statute and rule. The Code provides that, generally, "[a] criminal action shall be tried in the county in which the crime is committed." Iowa Code § 803.2(1) (2019). However, the district court may grant a pretrial motion for change of venue as allowed in Iowa Rule of Criminal Procedure 2.11. *Id.* § 803.2(2). Rule 2.11 provides that if the court finds "there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from [the county in which trial is to be held], the court either shall order that the action be transferred to another county in which that condition does not exist . . . or shall order that the trial jury be impaneled in and transferred from a county in which the offensive condition does not exist." Iowa R. Crim. P. 2.11(10)(*b*) (2022). In Iowa, the statute and the rule are neutral as

between the state and the defendant. Both the state and the defendant have an interest in the fair and impartial administration of the criminal laws, and both are authorized to protect that interest by moving to change venue when that interest is jeopardized. *See, e.g., State v. House*, 978 P.2d 967, 976 (N.M. 1999) ("By referring to the movant as an unspecified 'party,' this statute grants to both the defendant and the State the right to seek a change of venue."). Indeed, the district court had both inherent and common law authority to move the criminal trial in the interests of justice. *See State v. Chandler*, 376 S.E.2d 728, 735–36 (N.C. 1989) (recognizing that the trial court had inherent and common law authority to transfer venue in a criminal case in its discretion "in the furtherance of justice" and affirming state's motion to transfer venue).

The concurrence has misconstrued the statute and the rule. The concurrence repeatedly refers to "Dorsey's statutory right" to be tried in her home county. However, the defendant has no such right. Instead, as explained above, the statute and rule are neutral as between the state and the defendant. Either party has the right to transfer the venue of the criminal proceeding upon a proper showing. If the statute and rule created a right in favor of the defendant to be tried in the county in which the crime was committed, then the defendant would have the ability to waive the right and be tried in a different county. Except, as the court explains, a criminal defendant does not have any such right. Instead, the defendant, just like the state, must prove that a fair and impartial trial cannot be had in the county in which the crime was committed. In addition, as the court explains, in most cases, the defendant is the party seeking to transfer venue of the trial outside the county in which the crime was committed. As the court also explains, in most cases, the defendant is not able to do so. The concurrence never explains how the statute and rule create a statutory right in

favor of the defendant that the defendant cannot unilaterally waive and that, in most cases, force the defendant to be tried in a county in which the defendant does not want to be tried. I suggest there is not a good explanation; I am unaware of any other "right" that typically works to the defendant's disadvantage.

When the statute and rule are fairly read, it is apparent the district court has considerable discretion in ruling on a motion to change venue regardless of which party made the motion. "When pretrial publicity is at issue, 'primary reliance on the judgment of the trial court makes [especially] good sense' because the judge 'sits in the locale where the publicity is said to have had its effect' and may base her evaluation on her 'own perception of the depth and extent of news stories that might influence a juror.' " *Skilling v. United States,* 561 U.S. 358, 386 (2010) (alteration in original) (quoting *Mu'Min v. Virginia,* 500 U.S. 415, 427 (1991)). "Appellate courts making after-the-fact assessments of the media's impact on jurors should be mindful that their judgments lack the on-the-spot comprehension of the situation possessed by trial judges." *Id.*

In my view, the district court did not abuse its considerable discretion in granting the State's motion to change venue and protecting the public's interest in conducting a fair and impartial criminal trial. The court disagrees and faults the district court for granting the State's motion to transfer venue prematurely without attempting voir dire a second time. The Tenth Circuit rejected a similar argument in a case where the government moved for a change of venue following two mistrials, explaining that "the Supreme Court has never determined that a trial court must conduct voir dire before granting a motion for a change of venue due to pretrial publicity." *House v. Hatch,* 527 F.3d 1010, 1024 (10th Cir. 2008). Affording the district court broad discretion means giving the district court wide latitude to act even where we as individual judges might have done something

differently, but the court is not willing to afford the district court any such latitude or deference. In my view, that is an erroneously strict understanding and application of the abuse-of-discretion standard. *Cf. State v. Golphin*, 533 S.E.2d 168, 191 (N.C. 2000) (holding that the trial court did not abuse its discretion in granting the state's motion for change of venue); *Hernandez v. State*, No. 13–96–643–CR, 1999 WL 33756697, at *3 (Tex. Ct. App. Jan. 7, 1999) (recognizing that most cases "reflect defendants' failed attempts to change venue; few involve a challenge to the State's successful motion to change venue" and that the "record is very slim" but nonetheless finding no abuse of discretion); *Aranda v. State*, 736 S.W.2d 702, 705 (Tex. Crim. App. 1987) (en banc) ("The trial court is generally said to have discretion in passing upon the question of a change of venue. When there is conflicting evidence on the issue, a court's decision regarding change of venue will not normally be considered an abuse of discretion.").

In addition to applying an unduly narrow standard of review, the court errs in another respect. Because venue of a criminal trial is governed by statute and rule, any alleged error in the administration of the statute and rule does not require reversal and a new trial in the absence of prejudice. *See Hatch*, 527 F.3d at 1026 (rejecting defendant's argument that "transfer of venue over a defendant's objection . . . constitutes a structural defect or fundamental error"); *House*, 978 P.2d at 978 ("Another important factor that would prove abuse of discretion in a venue determination is a showing by the complainant that he or she has been prejudiced by the trial court's decision.").[7] This is true with respect

---

[7]The concurrence's reliance on *State v. Calhoun*, 559 N.W.2d 4 (Iowa 1997), for the contrary conclusion is misplaced. That case had nothing to do with change of venue due to pretrial publicity. Instead, the court dismissed ten charges due to the government's failure to prove venue as an essential element of the offense. *See id.* at 6 ("Our determination that the State fails to offer sufficient proof to sustain a finding of venue necessitates that we reverse these

to our review of the district court's decision to deny a defendant's motion to change venue. *See State v. Evans*, 671 N.W.2d 720, 726 (Iowa 2003) (stating that "[b]efore we will reverse an order denying a motion to change venue, the defendant must show" actual prejudice or presumed prejudice). Because the statute and rule allow the state to move to change venue, this must also be true with respect to our review of the district court's decision to grant the State's motion to change venue. *See, e.g., Perkins v. State*, 483 N.E.2d 1379, 1383 (Ind. 1985) (holding that the denial of the defendant's motion to set aside the selection of the county of venue was not reversible error where the defendant "failed to show that he was prejudiced or harmed by the change of venue"); *Garza*, 974 S.W.2d at 261 (stating that any error in changing venue would not require reversal unless it affected the defendant's "substantial rights" (quoting Tex. R. App. P. 44.2(b))); *State v. Hunt*, 555 A.2d 369, 374 (Vt. 1988) (stating that reversal was not required where the defendant "failed to demonstrate prejudice resulting from the change of venue").

A leading case regarding nonconstitutional change of venue issues is *United States v. Davis*, 785 F.2d 610 (8th Cir. 1986). There, the defendant was charged with rape in the Hot Springs Division of the United States District Court for the Western District of Arkansas. *Id.* at 613. After two hung juries, "the district court, upon the government's motion, decided to transfer the case to the El Dorado Division." *Id.* at 616. The court based its decision on "(1) the two mistrials; (2) the news coverage of the case; (3) an investigation into juror misconduct in the second trial; and (4) its belief that El Dorado was the most convenient neutral location which would be far enough away to obtain an

---

convictions. The case is remanded for entry of an order dismissing the ten counts of forgery." (citation omitted)).

impartial jury." *Id.* After the transfer and a third trial, the defendant was convicted. *Id.* at 613. The Eighth Circuit rejected the defendant's challenge to the change of venue. *Id.* at 616. The court explained, "The sixth amendment to the United States Constitution requires that a trial be held in the state and district where the crime was committed. However, a defendant does not have a right to be tried in a particular division." *Id.* Because this was a nonconstitutional venue decision, the district court "ha[d] broad discretion in determining where within a district a trial will be held." *Id.* The court rejected the defendant's challenge to the change of venue because he failed to "show any actual prejudice" from the transfer. *Id.* For example, the defendant did not show "that he was unable to present his case" or that he was denied witnesses. *Id.*

Similarly, in *United States v. Walters*, a federal district court in Mississippi rejected the defendant's nonconstitutional challenge to a change of venue:

> Contrary to Defendant's hyperbolic assertions in briefing, the Court did not send him off to some "strange locality" far from his home or the location of his alleged crimes. The Court just moved the trial of this case to a better-equipped courthouse approximately 70 miles south of Hattiesburg, in a division where the Court can seat an impartial jury.

No. 2:19–CR–51–KS–MTP, 2020 WL 1964533, at *2 (S.D. Miss. Apr. 23, 2020). The court explained that when the defendant asserts a nonconstitutional challenge, as in this case, the court must look at various factors to determine whether the defendant would be prejudiced by transferring venue. *See id.* There, the court concluded that the change in venue was "no less convenient for Defendant or the witnesses in th[e] case." *Id.* The court concluded, "The Court has selected the division in which it believes Defendant will get the fairest and most efficient trial, with the least chance of a mistrial. Defendant has not demonstrated that the . . . purported inconvenience to him or his witnesses

outweighs the Court's concomitant concern for the prompt administration of justice." *Id.* at *3.

Dorsey has not established that she was prejudiced by the change of venue for her criminal trial. She has not alleged that her attorneys were less able to represent her. She has not identified how her trial strategy changed. She has not identified any witnesses that were not able to testify due to the change in venue. She has not identified any evidence that she was unable to present. She has not alleged that the trial jury was actually prejudiced against her.

In the absence of any evidence that Dorsey was prejudiced by transferring venue of her case to a different county, she is not entitled to a new trial. *See Alvarez*, 561 F. App'x at 381 (upholding decision to transfer venue where the defendants failed to establish the transfer of venue "hindered the [defendants'] ability to present their defenses"); *United States v. Ezeodo*, 748 F.2d 97, 98–99 (2d Cir. 1984) (rejecting defendant's challenge to transfer of venue where defendant "failed to submit any evidence of hardship or prejudice, such as the inability to bring specific witnesses to [the new venue] or to confer with his attorney"); *Perkins*, 483 N.E.2d at 1383; *House*, 978 P.2d at 978; *State v. Lujan*, No. A–1–CA–40155, 2024 WL 3900101, at *3 (N.M. Ct. App. Aug. 22, 2024) (affirming transfer of venue over the defendant's objection where the defendant failed to preserve his claim that "he was prejudiced by the makeup of the jury within the new trial venue"); *Garza*, 974 S.W.2d at 261; *Hunt*, 555 A.2d at 374.

While I disagree with the result in this case, I understand the court's and the concurrence's instinct to reverse the convictions in this case. The state rarely seeks to change venue, and the novelty of the request does create an air of impropriety. However, the infrequency of the request demands the court be more clear-eyed in evaluating Dorsey's claim and not less. Our task in every case is to

determine whether the district court erred in some respect and, if so, whether the error was prejudicial, that is, whether the error interfered with the fair and impartial administration of justice. *See In re Det. of Blaise*, 830 N.W.2d 310, 320–21 (Iowa 2013) (stating that the court may raise the issue of prejudice and/or harmless error sua sponte). A clear-eyed assessment of this case shows the district court did not abuse its discretion, and the transfer of venue did not interfere with the fair and impartial administration of justice. There is no federal or state constitutional right at issue. Dorsey was not transported to some remote place beyond the seas to be tried in a foreign land. She was tried in a unified district court in the same judicial district one county west of where the crime occurred under the same law and the same rules of criminal procedure. She was not denied access to legal representation. She was not denied access to her witnesses or her evidence. Dorsey was entitled to a fair trial, and she received one. I respectfully dissent from the court's decision to grant her another trial.

     May, J., joins this dissent.